CABLE HOLDINGS OF GEORGIA, INC., Plaintiff–Appellee,

v.

McNEIL REAL ESTATE FUND VI, LTD., Woodsong Apartments d/b/a Lakes Apartments, Robert A. McNeil Corporation, ODC Communications Corporation, Woodsong Associates, Ltd., Defendants–Appellants.

No. 91–8032.

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1992.

Sidney Oslin Smith, Jr., Alston & Bird, John I. Spangler, III, Joseph William Watkins, Long Weinberg Ansley & Wheeler,

Benjamin Louis Weinberg, Jr., Ronald Ray Coleman, Atlanta, Ga., Mark J. Tauber, Piper & Marbury, Deborah C. Costlow, Winston & Strawn, Thomas C. Power, Washington, D.C., for defendants-appellants.

Stephen Edmund O'Day, Hurt Richardson Garner Todd & Cadenhead, Terrence B. Adamson, Dow Lohnes & Albertson, Peter Crane Canfield, Atlanta, Ga., Howard Graff, Baer Marks & Upham, Neal S. Barlia, New York City, for plaintiff-appellee.

Before BIRCH, Circuit Judge, TUTTLE, Senior Circuit Judge, and FULLAM *, Senior District Judge.

BIRCH, Circuit Judge:

In this case we interpret Section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559 (1988) (the "Cable Act"). Section 621(a)(2) grants cable companies which have been franchised by a governmental franchising authority a right to access "public rights-of-way" and "easements ... which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2) (1988). Below, appellee Cable Holdings of Georgia, Inc., d/b/a Smyrna Cable TV ("Smyrna Cable"), a franchised cable company in Cobb County, Georgia, brought an action pursuant to Section 621(a)(2) in the United States District Court for the Northern District of Georgia. Smyrna Cable sought to compel access to the interiors of the multi-unit apartment buildings then owned and operated by appellants McNeil Real Estate Fund VI, Ltd., The Robert A. McNeil Corporation, and Woodsong Associates, Ltd. (collectively, "McNeil"). Smyrna Cable reasoned that because McNeil had privately agreed to grant interior access to a telephone company, an electric company, and a competing video programming services provider, McNeil had "dedicated" compatible easements which were accessible by Smyrna Cable under Section 621(a)(2). The

* Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania,    sitting by designation.

district court agreed with Smyrna Cable, ordering McNeil to allow the cable company to access and occupy the interior of McNeil's apartment buildings so that Smyrna Cable could maintain a cable system capable of serving the residents of those buildings.

█ We disagree with the district court's construction of the Cable Act. Initially, the district court's reading of Section 621(a)(2) violated a fundamental canon of statutory construction: courts must avoid any statutory interpretation which creates substantial constitutional difficulties. In ruling that Section 621(a)(2) authorized Smyrna Cable's physical occupation of McNeil's private property for which McNeil need not be compensated, the district court adopted a construction of the Cable Act which raises serious concerns under the Takings Clause of the Fifth Amendment. Congress does not have the constitutional power to authorize such a permanent physical occupation of an owner's private property. That principle would seem to apply *even when* a property owner has privately allowed other occupations which are "compatible" with a government-sanctioned invasion. Because the district court's construction of Section 621(a)(2) created this difficult Fifth Amendment issue, we are reluctant to accept it.

Of course, if the district court's interpretation was required by the text and legislative history of the Cable Act, we would be required to reach the constitutional question. However, our independent review of the relevant sources indicates that the admittedly ambiguous legislation at issue in this case is capable of being construed constitutionally: Section 621(a)(2) authorizes a franchised cable company's access to easements on private property only when the private property owner has dedicated those easements for the general use of any utilities. We adopt this reading of Section 621(a)(2) because it is consistent with our prior precedent and because it avoids the constitutional problems arising under the district court's interpretation of the Cable Act. Since it is clear that the private property owner in this case has not dedicated

easements within its buildings for the general use of all utilities, Section 621(a)(2) does not afford Smyrna Cable with a right to access and occupy McNeil's private apartment buildings. Accordingly, we REVERSE the judgment in favor of Smyrna Cable and REMAND the case so that the district court may enter judgment in favor of the appellants.

## I. BACKGROUND

### A. *Factual Background*

When this litigation began, McNeil owned and operated the Lakes Apartments and the Woodsong Apartments, two private complexes in Cobb County, Georgia. These complexes are comprised of separate multi-unit residential buildings and surrounding land. In 1980, McNeil entered into two contracts with Smyrna Cable for the provision of cable programming services to the residents of these complexes. Smyrna Cable constructed its cable system and provided cable television services to McNeil's residents through the summer of 1985.

When Smyrna Cable's contracts expired, McNeil reached an agreement with a competing video programming services provider—appellant ODC Communications Corporation ("ODC"). Unlike Smyrna Cable, ODC is not a franchised cable company. Because all of ODC's equipment is located on private property and ODC's systems do not use or cross public rights-of-way, ODC is able to provide cable television services without obtaining a franchise from Cobb County. Of course, because the services provided by ODC and Smyrna Cable are substantially similar, the two companies compete for the same television subscribers. In this case, those subscribers are the occupants of McNeil's apartment buildings.

The contracts between McNeil and ODC specify that ODC is allowed to construct on McNeil's property a satellite dish receiver and a local television antenna. In addition, ODC is permitted to construct a cable system across and into McNeil's property. Currently, ODC's cable system is completely contained on McNeil's private property: the system runs from the satellite dish and antenna, to the apartment buildings, and

eventually inside each building to the individual residential units. In addition, the residents of McNeil's apartments are also linked to electricity and telephone service. Both Georgia Power Company and Southern Bell Telephone and Telegraph Company have wiring which crosses McNeil's land in order to reach and access the interiors of McNeil's buildings.

B. *Procedural Background*

In August 1985, Smyrna Cable filed this action in order to regain access to the residents of McNeil's apartment buildings. Although Smyrna Cable's complaint asserted several theories in support of its alleged right to continue installing and operating its cable facilities at the Lakes Apartments and the Woodsong Apartments, the only remaining claim is Smyrna Cable's potential remedy under Section 621(a)(2) of the Cable Act. This section of the Cable Act provides:

> Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is [sic] within the area to be served by the cable system and which have been dedicated for compatible uses....

47 U.S.C. § 541(a)(2) (1988). Smyrna Cable's complaint argued that McNeil had privately granted exterior and interior easements to three entities—ODC, Georgia Power, and Southern Bell. In addition, Smyrna Cable claimed that these easements were granted for uses which were compatible with the construction of its cable system because Smyrna Cable's wires and equipment could directly trace—"piggyback"—any of the other cables or wires already present on McNeil's property. Therefore, Smyrna Cable argued, Section 621(a)(2) provided it with a right to access and permanently occupy McNeil's property, without McNeil's consent, in order to compete with ODC for the potential television subscribers living in McNeil's buildings.

After discovery, the parties filed cross-motions for summary judgment. Smyrna

Cable submitted briefing and evidence in support of the arguments pressed in its complaint. McNeil's defense to these allegations primarily consisted of two arguments. First, McNeil denied the existence of any easements on or within its property. McNeil claimed that ODC and the local utilities were permitted to access McNeil's property in order to provide services, but McNeil's permission did not take the legal form of an "easement" which would be accessible under the language of Section 621(a)(2). Second, McNeil asserted that even if there were easements in favor of ODC and the utilities, those easements were privately granted to particular entities, not dedicated to utility use in general. McNeil's position was that the Cable Act did not mandate access to such private easements. Alternatively, McNeil stressed that if Section 621(a)(2) did provide such a right of access, the provision must be declared unconstitutional because it would effectively authorize a taking of McNeil's private property without providing for just compensation.

In a series of orders, the district court ruled in favor of Smyrna Cable. First, the court found that private easements did exist on McNeil's property. Although the contracts between McNeil and ODC expressly denied the existence of any interior easements in favor of ODC, the court ruled that the physical presence of ODC's cable wires created easements under Georgia law. In addition, the court implicitly found easements in favor of Southern Bell and Georgia Power, ruling that Smyrna Cable could "piggyback its cable along easements that are actually occupied by telephone and electrical lines." [1] R7–111–7.

Second, the court concluded that Section 621(a)(2) allowed Smyrna Cable to access *any* easements, even easements privately granted by a property owner in favor of a particular entity. *See Cable Holdings, Inc. v. McNeil Real Estate Fund VI, Ltd.*, 678 F.Supp. 871, 873 (N.D.Ga.1986). The district court argued that because "[t]he language of [Section 621(a)(2)] contains no

1. The district court's rulings regarding the existence of utility easements are less than clear.

Fortunately, the district court's lack of clarity on this issue is not important. *See infra* note 3.

requirement that the easement be dedicated for public use," *Cable Holdings*, 678 F.Supp. at 873, Congress intended to allow "cable operators to piggy back their lines onto *both* public and private easements, provided those easements are dedicated for compatible uses." R7–111–3. Therefore, the court ordered that Smyrna Cable could construct a cable system across and inside McNeil's property, as long as Smyrna Cable directly followed the competing cable company's system, the electric wires, and/or the telephone lines.

Finally, the district court rejected McNeil's argument that such a forced occupation of McNeil's property constituted a compensable taking under the Fifth Amendment. *See* R8–135. The court apparently recognized that the Cable Act does not contain a just compensation provision.[2] Nevertheless, the court ruled that Congress could authorize a permanent physical occupation of private property without providing for just compensation, as long as the private property owner had granted compatible easements to other entities. Therefore, the district court declined McNeil's invitation to declare Section 621(a)(2) unconstitutional.

## II. DISCUSSION

### A. *The District Court's Interpretation Of Section 621(a)(2) Creates Substantial Constitutional Difficulties*

This court will avoid any interpretation of a federal statute which raises serious constitutional problems or results in an unconstitutional construction. This canon of statutory interpretation is well-established in the case law. *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988); *United States v. Brown*, 731 F.2d 1491, 1494 (11th Cir.1984); *Federal Election Comm'n v. Florida For Kennedy Comm.*, 681 F.2d 1281, 1287 (11th Cir.1982). The district court's construction of Section 621(a)(2) creates serious questions regarding the potential unconstitutional taking of McNeil's pri-

vate property. Therefore, this court is wary of such an interpretation.

1. Government authorizations of permanent physical occupations violate the Takings Clause.

If Section 621(a)(2) authorized Smyrna Cable to construct its cable system on McNeil's private property regardless of the presence of any compatible easements, we would have little difficulty in finding the provision in violation of the Fifth Amendment. After all, under such facts Section 621(a)(2) would be indistinguishable from the New York statute analyzed in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). In *Loretto*, the New York law at issue provided that an owner of a multi-unit apartment building "must permit a cable television company to install its cable facilities upon his property." *Id.* at 421, 102 S.Ct. at 3168. Writing for the Court, Justice Marshall concluded that such a "permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Id.* at 426, 102 S.Ct. at 3171. Therefore, the Court remanded the case for a determination of the amount of compensation due the property owner.

*Loretto*, then, stands for the proposition that the government may not require (without providing for just compensation) a property owner to grant access to a third party so that the third party can permanently occupy the owner's premises. The rationale of *Loretto* is simple. The most fundamental private property right is the owner's ability to exclude others. *See, e.g., id.* at 433, 102 S.Ct. at 3175; *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987); *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80, 100 S.Ct. 383, 393, 62 L.Ed.2d 332 (1979). When the government appropriates an owner's right to exclude another's physical presence without paying

---

**2.** Although the Cable Act does provide that property owners be compensated for the *damages* caused by a franchised cable company, 47

U.S.C. § 541(a)(2)(C) (1988), the statute does not provide for just compensation for government *takings* of private property.

the owner just compensation, the government violates the Takings Clause.

2. The district court interpreted Section 621(a)(2) in a manner which may usurp an owner's right to exclude.

Of course, the district court did not construe Section 621(a)(2) to permit a franchised cable company to access and occupy another's property under all circumstances. Rather, the court ruled that Section 621(a)(2) only permits such a physical occupation when the property owner has privately agreed to allow other occupations which would be compatible with a government-sanctioned occupation by a cable company. Given that the government may not appropriate a property owner's right to exclude, the takings issue created by the district court's interpretation is whether the government may appropriate the right to exclude whenever the owner selectively relinquishes that right by permitting a compatible occupation.

We decline to reach this takings issue today. We note only that if Section 621(a)(2) authorized such an occupation by a franchised cable company, this court would have substantial reservations regarding the constitutionality of the Cable Act. Crucial to our trepidation is the fact that the district court's construction of Section 621(a)(2) effectively permits exactly the same occupation found impermissible in *Loretto*—the permanent physical presence of a franchised cable company inside private apartment buildings against the express wishes of the property owner. Because every modern apartment building is linked to electric, telephone, and/or video programming services, the district court's interpretation effectively grants franchised cable companies the same unencumbered right of access to private property which the Supreme Court held to be a compensable taking in *Loretto*. Indeed, in this case, McNeil could only prevent Smyrna Cable's physical occupation if McNeil also denied its residents the benefits of service from Georgia Power, Southern Bell, and ODC. We doubt whether the government may so condition a property owner's right to ex-

clude. *Cf. Loretto*, 458 U.S. at 439 & n.17, 102 S.Ct. at 3178 & n.17.

The government could not force a beachfront property owner to provide an easement in favor of the general public so that all could access the owner's beach. *See Nollan*, 483 U.S. at 831, 107 S.Ct. at 3145. Could the government instead legislate that if the beachfront owner allowed his neighbors to cross his beach, he must also allow the public at large to cross? Similarly, the state could not force landlords to allow third parties to build swimming pools on the rooftops of the landlords' apartment buildings. *See Loretto*, 458 U.S. at 436, 102 S.Ct. at 3176. Could the state instead pass a law providing that if a landlord set aside space for one swimming pool company, he must also allow access to that same space for a competing swimming pool company? Admittedly, these analogies are less than perfect. However, the illustrations adequately demonstrate the constitutional difficulties engendered by the district court's interpretation of Section 621(a)(2).

■ A property owner's right to exclude another's physical presence must be tenaciously guarded by the courts. The district court's resolution of this case failed to recognize this fundamental principle of private property. Because the district court's interpretation of Section 621(a)(2) creates significant constitutional problems regarding the government's ability to condition a property owner's right to exclude, we must search for a construction of the Cable Act more consistent with the demands of the Takings Clause.

B. *Section 621(a)(2) Can Be Interpreted So As To Avoid These Substantial Constitutional Difficulties*

■ If Section 621(a)(2) expressly provided for the right of access asserted by Smyrna Cable, we would be required to reach the takings issue delineated above. However, our independent review of the relevant sources reveals that Congress did not intend for Section 621(a)(2) to reach as far as claimed by Smyrna Cable. The language and legislative history of Section 621(a)(2) indicates that the Cable Act does

not provide a right to access wholly private easements granted by property owners in favor of particular utilities. Rather, Section 621(a)(2) only allows a franchised cable company to access easements on private property when the property owner has dedicated those easements for general utility use. In addition to being a sounder interpretation of Section 621(a)(2), our construction of the Cable Act is consistent with our prior cases in this area and avoids the constitutional problems caused by the district court's reading of Section 621(a)(2).

    1. Congress did not intend for Section 621(a)(2) to reach wholly private easements so that franchised cable companies could access the interiors of private apartment buildings.

On its face, Section 621(a)(2) does not provide the right of access sought by Smyrna Cable. The provision does provide a right to access "easements ... which have been dedicated for compatible uses," 47 U.S.C. § 541(a)(2) (1988), but it does not explicitly include wholly private easements in the class of easements accessible by franchised cable companies. In fact, the term "easement" is not defined anywhere in the statute. Because Smyrna Cable's claimed right to access *all* easements is so broad and so fraught with constitutional difficulties, we are reluctant to accept it unless Congress so provided with the clearest of language.

    Moreover, the one word which does qualify the types of easements accessible by a cable company—"dedicated"—militates against Smyrna Cable's construction. Congress's use of the word "dedicated" at least suggests a reference to the legal meaning of "dedication." In general, an easement is legally "dedicated" only when the private property owner entirely relinquishes his rights of exclusion regarding the easement so that the general public may use the property. *See Black's Law*

*Dictionary* 412 (6th ed. 1990). For example, a property owner who develops a subdivision will routinely "dedicate" corridors of land throughout the subdivision for general use by all utilities that service the subdivision. *See id.* at 413. Smyrna Cable does not suggest that McNeil legally "dedicated" easements to the public solely by privately allowing interior access to Georgia Power, Southern Bell, and ODC. Therefore, although not dispositive, the "dedication" language of Section 621(a)(2) seems to contradict Smyrna Cable's alleged right to access the private, non-dedicated easements which may exist on McNeil's property.[3] *See, e.g., Media Gen. Cable v. Sequoyah Condominium Council of Co-Owners,* 737 F.Supp. 903, 911 & n.14 (E.D.Va.1990); *Cable Assocs. v. Town & Country Management Corp.,* 709 F.Supp. 582, 584–85 (E.D.Pa.1989).

Because the language of the statute is less than clear, we turn to the legislative history of the Cable Act. Our review of these sources also indicates that Smyrna Cable's interpretation of Section 621(a)(2) is erroneous. Most importantly, Congress included, and subsequently rejected, a form of the right of access claimed by Smyrna Cable. Proposed Section 633 of the Cable Act would have provided a franchised cable company with a right to access the interior of a multi-unit apartment building when service was requested by a tenant of the building, even if the property owner objected to the cable installation. *See* H.R. No. 4103, 98th Cong., 2d Sess. § 633 (1984); H.R.Rep. No. 934, 98th Cong., 2d Sess. 79–81, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4716–18.

Section 633, which, interestingly enough, *did* contain a just compensation provision in recognition of the Supreme Court's decision in *Loretto,* was ultimately rejected by Congress. *See, e.g.,* 130 Cong.Rec. H10444 (daily ed. Oct. 1, 1984) (statement of Rep. Fields). Therefore, Smyrna Cable's

---

**3.** As previously mentioned, McNeil disputes the existence of any easements on its property. McNeil argues that it allowed ODC, Georgia Power, and Southern Bell to access its buildings, but granted no entity a legal easement with respect to the interiors of its property. Because of our disposition of this case, we can assume without deciding that the access granted to ODC and the utilities are legal easements. This assumption renders moot the appellants' motion to strike, which was carried with the case.

claimed right to access the interiors of multi-unit apartment buildings is belied by the fact that Congress considered and rejected a similar right of access. This court is reluctant to assume that Congress intended to encompass *sub silentio* in Section 621(a)(2) what it expressly rejected in proposed Section 633. *See, e.g., INS v. Cardoza–Fonseca,* 480 U.S. 421, 442–43, 107 S.Ct. 1207, 1219, 94 L.Ed.2d 434 (1987). "The fact that section 633 was not part of the [Cable] Act as it ultimately emerged from Congress is a strong indication that Congress did not intend that cable companies could compel the owner of a multi-unit dwelling to permit them to use the owner's private property to provide cable service to apartment dwellers." *Cable Investments, Inc. v. Woolley,* 867 F.2d 151, 156 (3d Cir. 1989).[4]

In support of its alleged right to access and occupy McNeil's apartment buildings, Smyrna Cable relies heavily upon this passage of legislative history:

> Subsection 621(a)(2) specifies that any franchise issued to a cable system authorizes the construction of a cable system over public rights-of-way, and through easements, which have been dedicated to compatible uses. This would include, for example, an easement or right-of-way dedicated for electric, gas or other utility transmission.... Any private arrangements which seek to restrict a cable system's use of such easements or rights-of-way which have been granted to other utilities are in violation of this section and not enforceable.

H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4696. In essence, Smyrna Cable alleges that McNeil's private access agreements with ODC, Georgia Power, and Southern Bell are unenforceable arrangements which seek to restrict Smyrna Cable's use of the easements which may exist on McNeil's property.

Smyrna Cable's reliance upon this passage begs the question. Granted, the passage does illuminate that Congress intended to nullify any private agreements which sought to deny a cable company's access to *dedicated* easements. But the passage does not speak to the crucial issue in this case—whether or not the alleged easements in favor of ODC, Georgia Power, and Southern Bell are "dedicated" easements within the meaning of Section 621(a)(2). As previously discussed, the text and legislative history of the Cable Act indicates that Section 621(a)(2) does not encompass private easements which allow particular utilities to access apartment buildings. Therefore, McNeil's private agreements with ODC and the utilities do not violate the passage of legislative history cited by Smyrna Cable, even though those agreements may effectively exclude Smyrna Cable. *See Cable Investments,* 867 F.2d at 155 (rejecting a franchised cable company's argument grounded upon the same passage of legislative history). Simply put, McNeil's agreements do not "seek to restrict a cable system's use of [*dedicated*] easements or rights-of-way which have been granted to other utilities." H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4696 (emphasis added).

Finally, Smyrna Cable's policy arguments are insufficient to support its claimed right of access under Section 621(a)(2). Smyrna Cable argues that allowing access to the interiors of McNeil's apartment buildings will further the Cable Act's goal of enhanced competition in the cable industry, primarily because Smyrna Cable would be able to compete with ODC for the customers living in McNeil's buildings. In rebuttal, McNeil and ODC contend that Smyrna Cable's construction of Section 621(a)(2) would actually be anticompetitive because the alleged right of access to apartment buildings would only be enforceable by *franchised* cable companies, leaving non-franchised cable companies (such as ODC) at a distinct disadvan-

---

**4.** The *Cable Investments* opinion contained a more thorough analysis of the legislative history surrounding the enactment of Section 621(a)(2). *See* 867 F.2d at 153–59. In this analysis, the court conclusively demonstrated that Congress did not intend to provide a right to access the interiors of private multi-unit apartment buildings.

tage. In other words, the appellees envision this unequal regime: Smyrna Cable is free to reach exclusive arrangements with property owners without fearing competition from companies such as ODC, but ODC cannot reach similar exclusive arrangements because Smyrna Cable could always enforce its alleged right of access under the Cable Act.[5]

We express no opinion on the complicated empirical question of which construction of Section 621(a)(2) best promotes competition in the cable industry. We note only that the policy arguments advanced by the parties were not squarely considered by the legislature when it enacted Section 621(a)(2).[6] Therefore, those arguments are insufficient to alter our construction of the Cable Act.

> 2. Our construction of Section 621(a)(2) is consistent with prior precedent and avoids the constitutional problems created by the district court.

This court has rendered two prior opinions interpreting the language of Section 621(a)(2). In *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir.1988), we ruled that a franchised cable company has an implied right to sue in federal court whenever it is denied access to dedicated utility easements.[7] *See id.* at 1364. In *Centel Cable Television Co. v. Thos. J. White Development Corp.*, 902 F.2d 905 (11th Cir.1990), we held that the developer of a residential subdivision could not defeat a cable company's right to access the easements dedicated by the property owner for utility use throughout the subdivision. Therefore, we concluded that the franchised cable compa-

ny could traverse the private roads in the development in order to effectuate the cable company's right to access the dedicated utility easements. *See id.* at 908–09. Smyrna Cable contends that *Admiral's Cove* and *Thos. J. White* dictate a ruling in its favor in this case.[8]

We disagree with Smyrna Cable's reading of these two cases. The crucial distinction between these two cases and the present case is the types of easements involved. Both *Admiral's Cove* and *Thos. J. White* involved the *dedicated* utility easements which are typically granted before a private property owner begins the development of a new residential subdivision. *See Admiral's Cove*, 835 F.2d at 1360; *Thos. J. White*, 902 F.2d at 907. In both cases, the developer of the property dedicated utility easements by recording (with the appropriate governmental authority) plats showing the corridors of land available for general utility use. *See Admiral's Cove*, 835 F.2d at 1360; *Thos. J. White*, 902 F.2d at 907, 910. In both cases, the property developer was required by Florida law to dedicate these corridors of land for general utility use. *See* Fla.Stat. ch. 177.081 (1991); *id.* ch. 177.091(29). In both cases, we determined that these utility easements—dedicated to the public for general utility use— were precisely the types of easements accessible by a franchised cable company pursuant to Section 621(a)(2).

In sharp contrast to *Admiral's Cove* and *Thos. J. White*, the alleged easements at issue in the present case are not easements dedicated by the developer of a residential subdivision for general utility use. McNeil

---

**5.** Even proposed Section 633 would not have created this unequal regime. Under the rejected language, a franchised cable company would not have a right to access an apartment building if the property owner offered "equivalent" cable television services. *See* H.R. No. 4103, 98th Cong., 2d Sess. § 633(h)(1) (1984).

**6.** We also believe that it would be odd if Congress intended to sanction exclusive agreements when negotiated by franchised cable companies, while at the same time outlawing similar exclusive arrangements when negotiated by non-franchised cable companies.

**7.** We decline the appellants' invitation to revisit the question of whether Section 621(a)(2) provides an implied cause of action.

**8.** Although *Admiral's Cove* cited the district court's opinion in the present case, *see* 835 F.2d at 1362, this court has never affirmed the district court's holding that Smyrna Cable could access and occupy the interiors of McNeil's apartment buildings. Smyrna Cable's suggestion to the contrary must be rejected.

has not recorded plats showing corridors of property available for general use by utilities seeking to access the interiors of McNeil's apartment buildings. Rather, through private negotiation and agreement, McNeil has allowed particular entities to cross its land and enter its buildings in order to provide service for the tenants of the buildings. These access rights are not dedicated easements within the language of Section 621(a)(2) and within the scope of our interpretations of that language in *Admiral's Cove* and *Thos. J. White*. For this reason, the holdings in *Admiral's Cove* and *Thos. J. White* are not apposite to the facts of this case and do not support Smyrna Cable's claimed right to access and occupy the interiors of McNeil's private apartment buildings.[9] Accordingly, we hold that although Section 621(a)(2) authorizes a franchised cable company's right to access dedicated utility easements within a residential subdivision (as in *Admiral's Cove* and *Thos. J. White*), the Cable Act does not authorize a cable company to access private, non-dedicated easements which may exist so that particular utilities can access the interiors of multi-unit apartment buildings.[10]

In addition to clarifying our prior cases in this area, our holding also avoids the constitutional difficulties created by the district court's interpretation of Section 621(a)(2). As mentioned earlier, in ruling that the Cable Act allowed Smyrna Cable to physically occupy McNeil's private property, the district court raised serious concerns under the Takings Clause because the government may not appropriate an owner's right to exclude another's physical presence. By limiting the language of Section 621(a)(2) to those easements which are dedicated by the developers of residential subdivisions, we eliminate these substantial Fifth Amendment concerns. When a property developer dedicates corridors of land for general utility use, the government may lawfully designate franchised cable companies as users without appropriating an owner's right to exclude because *through dedication the property owner has voluntarily relinquished his right to exclude particular users.*[11] Therefore, in

9. We recognize that these prior cases contain broad language which could be construed as favoring Smyrna Cable's interpretation of Section 621(a)(2). Without exception, this broad language is not necessary for the *holdings* in *Admiral's Cove* and *Thos. J. White*. We are confident that, in spite of this broad language, these opinions neither contemplated nor approved the power of a franchised cable company to force its way onto private property, over the objection of the property owner, so that the cable company could permanently occupy the owner's apartment buildings and provide competing television service to the owner's tenants. Accordingly, we expressly limit *Admiral's Cove* and *Thos. J. White* to the facts involved in those cases.

10. Acceptance of Smyrna Cable's construction of the Cable Act would be an unwarranted extension of the holdings in *Admiral's Cove* and *Thos. J. White*. Under Smyrna Cable's logic, the cable company's access in these prior two cases would not be restricted to the dedicated utility easements which abutted the private property edge of the single family home lots. If a homeowner in one of the subdivisions desired telephone or electrical service, Smyrna Cable's interpretation of Section 621(a)(2) would also allow the franchised cable company to cross the homeowner's front yard and permanently occupy the interior of the homeowner's residence— even if the homeowner wanted no cable television service at all.

11. Our prior jurisprudence in this area implicitly recognized this distinction. In *Admiral's Cove,* we solved the takings issue posed by *Loretto* by explaining that "most developers voluntarily grant easements for use by utilities, [therefore], Congress may force the developer to allow a cable franchise to use the easement without offending the taking cause [sic] of the Constitution. Such 'voluntary' action by developers may be an integral part of zoning procedures or the obtaining of necessary building permits. However obtained, once an easement is established for utilities it is well within the authority of Congress to include cable television as a user." *Admiral's Cove,* 835 F.2d at 1363 n. 7 (citation omitted); *see also Thos. J. White,* 902 F.2d at 909–10 (relying upon this footnote to resolve the property owner's takings argument).

It is unfortunate that we never pinpointed the critical fact: in both *Admiral's Cove* and *Thos. J. White,* the property owner *voluntarily* relinquished its rights of exclusion by dedicating utility easements via plat recordation. However, it is possible that the *Admiral's Cove* panel was hinting at the critical distinction—voluntary acquiescence to occupations—by its citation to *FCC v. Florida Power Corp.,* 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987). *Florida Power* stands not for the unacceptable proposi-

addition to being fairer to the text and history of Section 621(a)(2), our construction harmonizes our prior cases and satisfies the canon of statutory interpretation which seeks to avoid constitutional difficulties.[12]

## III. CONCLUSION

Today we have endeavored to clarify both Section 621(a)(2) of the Cable Act and our prior decisions defining the right of access granted by this provision. In order to avoid substantial constitutional problems and in order to be consistent with our prior decisions in this area of the law, we have concluded that Section 621(a)(2) provides a franchised cable company with the right to access only those easements which have been dedicated for general utility use, whether by plat recordation for a residential subdivision or otherwise. The alleged easements existing on McNeil's property have not been dedicated by McNeil for general utility use. Rather, these easements were privately granted by McNeil in order to allow limited rights of access to particular entities. Therefore, under Section 621(a)(2) of the Cable Act, Smyrna Cable has no right to forcibly access and occupy those easements.

Accordingly, we REVERSE the decision of the district court in favor of Smyrna Cable and REMAND the case so that the district court may enter judgment in favor of the appellants.

tion that the government may appropriate an owner's right to exclude, but for the narrower principle that once an owner relinquishes his exclusion rights, the government's regulatory abilities are greatly enhanced. *See id.* at 251–53, 107 S.Ct. at 1111–12. In *Florida Power,* the owner's voluntary relinquishment was its invitation to the cable company to occupy space on the owner's utility poles. *See id.* In *Admiral's Cove* and *Thos. J. White,* the owners' relinquish-

ment was accomplished when easements were dedicated for general utility use.

**12.** We note that two other courts have adopted this construction of Section 621(a)(2) in order to avoid the constitutional difficulties inherent in the district court's interpretation. *See Cable Investments,* 867 F.2d at 159–60; *Cable Assocs.,* 709 F.Supp. at 585–86.