In re 21ST CENTURY SATELLITE
COMMUNICATIONS, INC.,
Debtor.

Mink Associates I, LLC, a Florida limit-
ed liability company;  and 21st Centu-
ry Satellite Communications, Inc., a
Florida corporation, Plaintiffs,

v.

Moffat Communications,
Inc., Defendant.

Bankruptcy No. 01–08592–8P1.
Adversary No. 01–426.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 27, 2002.

Jonathan James Damonte, Largo, FL, for Mink Associates I, LLC.

Jeffrey W. Warren, Tampa, FL, for 21st Century Satellite Communications, Inc.

Omer Causey, Sarasota, FL, for defendant.

### ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

#### (Doc. Nos. 14 & 18)

ALEXANDER L. PASKAY, Bankruptcy Judge.

This is a chapter 11 case and the matters under consideration are two Motions for Summary Judgment, one filed by 21st Century Satellite Communications, Inc. (21st Century) and the other by Moffat Communications, Inc. (Defendant). The Motions were originally filed in a civil suit pending in the Sixth Judicial Circuit, in and for Pasco County, Florida, civil division, but removed to this Court pursuant to 28 U.S.C. § 1446 and F.R.B.P. 9027 by 21st Century, one of the Plaintiffs.

The Complaint filed in the state circuit court consists of three claims set forth in three separate counts. In Count I, both Plaintiffs, Mink Associates I, LLC (Mink) and 21st Century, seek money damages based on the claim of tortious interference with business relationship. In Count II, both Plaintiffs seek declaratory relief in the form of a determination of the rights of the Plaintiffs under a document entitled "agreement" entered into by 21st Century and Arbor Oaks Mobile Home Park (Park), on March 6, 1998. Count III is asserted by Mink and is based on trespass and seeks money damages. Both Plaintiffs demanded trial by jury.

In due course, the Defendant filed its Answer setting forth certain admissions and several denials. The Answer of the Defendant is coupled with two affirmative defenses, one based on the doctrine of estoppel and the other based on "consent." Both Plaintiffs filed a joint response to the affirmative defenses and denied both.

The Defendant also filed a Counter-Claim against both Plaintiffs. The claims in the Counterclaim are summarized as follows: Count I, for breach of contract against Mink; Count II for intentional interference with contractual relationship against Mink; Count III for conversion against 21st Century; Count IV for declaratory relief against Mink and 21st Century; and Count V for negligence against 21st Century. The Plaintiffs filed an Answer and asserted numerous affirmative defenses.

On August 8, 2001, at the conclusion of a duly scheduled pre-trial conference, this Court entered an Order and based on lack of jurisdiction remanded to the state circuit court all claims between Mink and the Defendant (Counts I and II of the Counter-Claim) but retained jurisdiction of all claims between 21st Century and the Defendant (Counts III, IV, and V of the Counter-Claim) (Doc # 3).

As noted earlier, the precise matter presently before this Court are the two Motions for Summary Judgment filed by 21st Century and the Defendant. In their Motions, both contend that based on the stipulation of the parties, entitled Stipulated Statement of Undisputed Facts (Stipulation), filed on January 14, 2002 and the pertinent part of the record, there are no genuine issues of material facts and each is entitled to a judgment in their respective favor as a matter of law.

The following facts are indeed without dispute and are as follows. 21st Century is a Florida corporation and in the business of providing satellite communication systems including cable television services to

private residential communities in Florida. On February 23, 1987, the Defendant's official name was Florida Satellite Network. On May 26, 1998, the Defendant changed its name to FSN Cable, Inc. and on March 13, 2000, it changed its name to its current name, Moffat Communications, Inc. The Defendant provides cable television services and is a franchised cable operator in Pasco County, Florida.

The Park was owned by Century Group, Inc. (Century Group) between August 29, 1986 and November 19, 1990, when Century Group sold the Park to BDC, Inc. on October 15, 1997. BDC, Inc. then sold the Park to Arbor Oaks I, LLC and Arbor Oaks II LLC (together, Arbor Oaks). On March 21, 2000, Arbor Oaks sold the Park to the Defendant, Mink.

On February 23, 1987, Century Group, as owner of the Park, entered into an agreement with the Defendant entitled "Cable Television Agreement" (1987 Agreement) (Exh. 1 of Counter–Claim) pursuant to which the Defendant agreed to furnish cable television service to the Park. The relevant provisions of the 1987 Agreement are as follows:

> Owner hereby grants to FSN CABLE TV an easement in gross, covering routing necessary for installation, marketing, maintenance or removal of cable television service.
>
> The term of this Agreement is for the duration of FSN CABLE TV grant of authority, function, license or permit and any extension(s) whichever is longer, commencing on the date hereof. If Owner sells, transfers or encumbers the Premises ... such sale or encumbrance will be made subject to the continuation of this Agreement and in connection therewith, this Agreement may be recorded in the real property records of Pasco County, Florida. Upon any termination hereof, FSN CABLE TV, at its

option, may remove the Equipment from the Premises, and Owner shall grant FSN CABLE TV reasonable access for such removal.

It is without dispute that the 1987 Agreement was not recorded in the public records of Pasco County, Florida.

On December 23, 1986, Century Group granted an "easement for right-of-way" to Withlacoochee River Electric Cooperative (Withlacoochee Coop) for the installation and maintenance of electric power lines on the property, including the Park. This easement was recorded in the public records of Pasco County, Florida on May 4, 1989 at Official Records Book 1806, page 0614–0615 (Exh. 1 of Stipulation).

On February 25, 1987, Century Group granted an "easement right-of-way" to Withlacoochee Coop for the installation and maintenance of electric power lines on the property including the Park. This easement was also recorded in the public records of Pasco County, Florida at Official Records Book 1584, page 1365–1367 (Exh. 2 of Stipulation). The Defendant installed the equipment and facilities necessary to provide cable television on the private easement of right-of-way granted by Century Group to the Withlacoochee Coop.

As noted earlier, the ownership of the Park changed between 1986 until the present, three times. It is also stipulated that the Defendant never contacted and informed any of the subsequent owners about the continuation of the 1987 Agreement in connection with any of the sales of the Park.

On March 6, 1998, 21st Century entered into an agreement (21st Century Agreement) with Arbor Oaks, the then owners of the Park, for providing cable television programming to the residents of the Park (Exh. B of the Complaint). Paragraph 5 of the 21st Century Agreement provided

that 21st Century would be provided with adequate space for the installation of 21st Century's equipment including no less than a 20 foot by 20 foot exterior portion of the common area for placement of 21st Century's antenna and satellite dish. The 21st Century Agreement also provided for an initial term of four (4) years commencing on the activation of the service, and automatically renewable for an additional term of three (3) years on each anniversary date, subject to a cancellation by either party no later than sixty (60) days prior to the anniversary date. (21st Century Agreement, ¶ 9). Under the 21st Century Agreement, it was the Park's obligation to provide utility services required for the operation of 21st Century's equipment.

As set forth in the Stipulation, at some point after the execution of the 21st Century Agreement, the Defendant became aware of the agreement and refused to remove its equipment, communicated with Park residents, and continued to provide cable television services. On August 11, 1998, through correspondence a Park supervisor notified John McQuaid, General Manager of the Defendant, that Arbor Oaks had chosen 21st Century as the cable provider and requested the Defendant to remove its equipment. (Exh. 3 of Stipulation). Through correspondence dated August 24, 1998, the Defendant provided the Park with notice of its claim of right to provide cable television services to the Park pursuant to 47 U.S.C. § 541(a)(2) and Florida Statutes § 177.091(29). (Exh. 3 of McQuaid deposition).

Thereafter, on November 16, 1998, the Park manager sent notification to Defendant that 21st Century had exclusive rights to be the sole provider of cable in the Park. (Exh. 4 of Stipulation). And, again on November 23, 1998, the Defendant provided the Park of its claim of right

to provide cable television services to the Park. (Exh. 5 of Stipulation).

The claims of 21st Century, as noted earlier, are a claim for tortious interference (Count I) and a request for declaratory relief (Count II). It is evident that the heart of the controversy involves the right of 21st Century to furnish cable television programming to the Park pursuant to the 21st Century Agreement, dated March 6, 1998, and entered into with Arbor Oaks for a term of four years. This in turn brings in the validity and enforceability of the 1987 Agreement between the Century Group and the Defendant. These are the two basic documents, coupled with the additional undisputed facts, relied on by 21st Century in support of its Motion for Summary Judgment.

It is the contention of 21st Century that the 1987 Agreement between the Century Group and the Defendant is unenforceable against subsequent owners of the Park for the following reasons:

i. The subsequent owners of the Park, including the current owner, Mink were unaware of the 1987 Agreement;

ii. The subsequent owners of the Park had no notice of the existence of the 1987 Agreement because the 1987 Agreement was never recorded on the Public Records of Pasco County (Stipulation, ¶ 7);

iii. All subsequent owners, including Mink, were bone fide purchasers for value, and therefore are not bound by a purported easement contained in the 1987 Agreement.

In addition, 21st Century contends that the Defendant never contacted any subsequent Park owners about the assignment or continuation of the 1987 Agreement every time the Park was sold (Stipulation, ¶ 13).

Before Arbor Oaks entered into the contract with 21st Century, it contacted the Defendant and inquired whether or not the Defendant had a contract to provide cable television service to the Park. (Wattles Affidavit, ¶ 5). According to Wattles, the Defendant failed to respond to the inquiry and did not inform Arbor Oaks of the existence of the 1987 Agreement with the Century Group. And, it did not notify Arbor Oaks of the 1987 Agreement until November of 1998 or about 8 months after Arbor Oaks entered into the agreement for cable television service to the Park with 21st Century. (Wattles Affidavit, ¶ 8). Lastly, a copy of the 1987 Agreement was not included in the closing documents for the sale of the Park by BCD, Inc. to Arbor Oaks. Nor is there any evidence that a copy of the 1987 Agreement was included in any of the closing documents for any of the other three transactions of the sale since the execution of the 1987 Agreement.

In support of the claim of 21st Century for tortious interference with business relationship (Count II), the Plaintiffs contend that (1) 21st Century and Arbor Oaks had a business relationship (¶¶ 14 and 15 of Stipulation); (2) the Defendant knew the existence of the 21st Century Agreement with Arbor Oaks (¶ 16 of Stipulation); (3) notwithstanding the fact that the Defendant knew of the exclusive 21st Century Agreement, the Defendant intentionally refused to comply with the demand of Arbor Oaks to cease to provide cable television service to the residents of the Park, refused to remove its equipment from the Park, communicated with the residents of the Park in an effort to retain or recruit Park residents as customers, and continued to provide cable television services to some Park residents from all times from 1988 until the present. (Exhs. 6–11 of McQuaid Deposition). Lastly, it is the contention of 21st Century that on January 14, 1999 and several other occasions there-

after, Arbor Oaks asked the Defendant to stop contacting the Park residents and the Defendant failed to comply with the request. These facts are indeed undisputed and according to 21st Century are sufficient to establish its claim for tortious interference with its business relationship with Arbor Oaks.

The Defendant, in its Motion for Summary Judgment, contends that the Stipulation is controlling, and that there are no issues of material fact. The Defendant contends that it is a franchised cable television operator in Pasco County, Florida. It concedes that there were several name changes involved, culminating into the current name of Moffat Communications, Inc. The Defendant concedes that it did not record the 1987 Agreement. In fact, the Defendant concedes that notwithstanding its knowledge of the existence of the 21st Century Agreement, it has refused to cease providing cable television services to Park residents, it has refused to remove its equipment from the Park, it continues to communicate with Park residents, and it continues to provide cable television services.

Mr. McQuaid, the general manager of the Debtor during the relevant time, states in his deposition that it is the Defendant's position that it has the authority to provide cable service under both the Florida Statutes and Federal law. Specifically, Mr. McQuaid stated the following:

In providing cable television service, we had a county and a city franchise to provide service within east and central Pasco County and the incorporated cities within it. That allowed us to have access to all public right of ways to provide cable service without further permit. That did not specifically give us access to private property. We relied on regulation and court cases to allow us

to follow existing property rights of utilities to provide cable service into private parks, you know, private property.

(McQuaid Deposition, p. 18, lines 13–23). Moreover, Mr. McQuaid stated that he believed that there was no termination clause in the 1987 Agreement, "the term of agreement is for the duration of the FSN Cable TV grant of authority, function, license, permit or extension, whichever is longer. So as long as we had a cable franchise, it was our understanding that we would be allowed to continue with this agreement." (McQuaid Deposition, p. 25, lines 12–17). The Defendant in its Response to First Request for Admissions denied admission number 8 and states "The term of the 1987 Cable Television Agreement was for the duration of Moffat's Pasco County franchise and any extensions thereof. Such franchise has been extended to March 31, 2002 pursuant to Pasco County Resolution 02–02, adopted October 2, 2001." Finally, in the Affidavit of Mr. McQuaid, paragraphs 5 and 6, he states that he did not talk to Ms. Wattles regarding any inquiry as to whether the Defendant had an existing agreement to provide cable television services in the Park.

Therefore, based on these facts, it is the contention of the Defendant that the 1987 Agreement has not been terminated and therefore Mink continues to be bound by its terms and the Defendant does not have to remove its equipment from the Park. The Defendant asserts that summary judgment is appropriate on Counts I and II of 21st Century's Complaint and Count IV of its Counter–Claim.

The narrow issue before this Court is whether or not a franchisee has a right-of-way granted to it to provide cable services upon private property under both Florida law and Federal law notwithstanding that the owner has affirmatively entered into another contract with another company to provide exclusive cable services. The governing law on this precise issue is the interpretation of Section 621(a)(2) of Communications Act of 1934, as amended 47 U.S.C. § 541(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559 (Cable Act).

Section 541(a)(2) grants cable companies, which have been franchised by a governmental franchising authority, a right to access "public rights-of-way" and "easements ... which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2). Specifically, this Section provides as follows:

Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses....

47 U.S.C. § 541(a)(2).

In *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600 (11th Cir.1992), Cable Holdings of Georgia, d/b/a Smyrna Cable (Smyrna Cable), a franchised cable company in Cobb County, Georgia, brought an action pursuant to 47 U.S.C. § 541(a)(2) to compel access to the interiors of the multi-unit apartment buildings then owned and operated by McNeil Real Estate Fund VI, Ltd. (McNeil). Smyrna Cable asserted that because McNeil had privately agreed to grant interior access to a telephone company, an electric company, and a competing video programming services provider, McNeil had "dedicated" compatible easements that were accessible by Smyrna Cable under 47 U.S.C. § 541(a)(2). The District Court agreed with Smyrna Cable and ordered McNeil to allow the cable company to access and occupy the interior of McNeil's apartment buildings. The Court

Of Appeals, however, disagreed with District Court's construction of Cable Act and reversed and remanded the District Court's findings.

The facts in *Cable Holdings* are similar to the facts at issue and are summarized as follows. McNeil owned several private apartment complexes in Cobb County. McNeil entered into two contracts with Smyrna Cable for cable programming services to residents of the complexes. Smyrna Cable constructed its cable system and provided cable television services to McNeil's residents through the summer of 1985. Smyrna Cable's contract expired and McNeil reached an agreement with a competing video programming services provider, ODC. In August of 1985, Smyrna Cable filed action to regain access to the residents of McNeil's apartment buildings.

McNeil's defenses were as follows: (1) it did not provide any easements to ODC; (2) if there were easements in favor of ODC and the utilities, those easements were privately granted to particular entitles, not dedicated to utility use in general; and (3) if Smyrna Cable was permitted to stay on its property, it was the equivalent of a taking without just compensation and therefore, that Section of the Cable Act should be found unconstitutional. *Cable Holdings*, 953 F.2d at 603.

The District Court ruled in favor of Smyrna Cable and concluded that (1) there was an implicit easement in favor of a telephone company and electric company; (2) Section 541(a)(2) allowed Smyrna Cable to access any easements, even easements privately granted by a property owner in favor of a particular entity; and (3) Congress could authorize a permanent physical occupation of private property without providing for just compensation, as long as the private property owner had granted compatible easements to other entities.

*Cable Holdings*, 953 F.2d at 603–604 (citations omitted).

In reversing the District Court's decision, the Court of Appeals held that the better interpretation of Section 541(a)(2) is that only a franchised cable company may have access to easements on private property when the property owner has dedicated those easements for general utility use. *Cable Holdings*, 953 F.2d at 606. This conclusion was based on the following analysis. The Court of Appeals noted that the word "easement" is not defined anywhere in the statute. Moreover, the word "easement" is qualified by the word "dedicated." An easement is legally "dedicated" only when the private property owner entirely relinquishes his rights of exclusion regarding the easement so that the general public may use the property. *Cable Holdings*, 953 F.2d at 606, *citing* Black's Law Dictionary.

The Court of Appeals then turned to the legislative history of the Cable Act to interpret Section 541(a)(2). The Court concluded that the history and the text itself does not preclude a private landowner from entering into private agreements that provide for easements and may deny franchise cable companies access. *Cable Holdings*, 953 F.2d at 607. The Court of Appeals determined that "dedicated" easements do not equate to private easements.

Finally, the Court of Appeals noted that its opinion was consistent with two other opinions rendered by the Court: *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir. 1988) and *Centel Cable Television Co. v. Thos. J. White Development Corp.*, 902 F.2d 905 (11th Cir.1990). In both *Admiral's Cove* and *Thos. J. White*, the easements involved were "dedicated" utility easements which were granted before a private property owner began the development of a new residential subdivision.

This is usually done by the developer of the property dedicating utility easements by recording plats showing the corridors of land available for general utility use. *Cable Holdings*, 953 F.2d at 608, citations omitted.

██ Based on the foregoing authority, this Court is satisfied that the Defendant does not have a right-of-way via a dedicated easement to the Park pursuant to 47 U.S.C. § 541(a)(2). The Defendant did not record the 1987 Agreement that granted it an easement, and instead relied upon the Withlacoochee Coop easements. However, it is evident that the intent of 47 U.S.C. § 521(a)(2) is to permit a franchisee a right-a-way and permanent easement if the private landowner has dedicated an easement to general utility providers. The undisputed record in this case leads this Court to conclude that the owner of the Park has not dedicated an easement as intended pursuant to 47 U.S.C. § 521(a)(2).

██ This leaves for consideration the enforceability of the 1987 Agreement. It facially appears that there is no precise termination date. Although it may have been permissible for the Defendant to use the Withlacoochee Coop easement, the record does not provide sufficient evidence for this Court to determine what extent it was used to install the equipment and what extent it was relied upon by the Defendant. Moreover, the record is devoid of facts regarding visually, how much notice 21st Century and Mink had regarding the Defendant's cable service on the Park. And, the lack of recordation of the easement does not have any controlling significance because it appears undisputed that the Park was already serviced by a cable provider, how else would the residences of the Park had television service. *See Albrecht v. Drake Lumber Co.*, 67 Fla. 310, 65 So. 98 (1914). There is nothing in this record to show that the 1987 Agreement was terminated.

Based upon the foregoing, it is improper for this Court to resolve the dispute by summary judgment. There are material issues of fact, including whether or not 21st Century and/or Mink had notice of the existence of the Defendant's cable service in the Park; whether or not the 1987 Agreement was ever terminated; whether or not the Defendant continues to have a franchise license to provide cable services in Pasco County; and whether or not the Defendant incurred substantial sums in reliance upon the right to the Park in further of its irrevocable license theory. Therefore, this Court shall set a final evidentiary hearing in this cause.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions for Summary Judgment be, and the same are hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that a pre-trial conference shall be held on April 2, 2002, beginning at 9:00 a.m. at Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, Florida, to frame the issues for trial including the following:

1. When if ever the 1987 Agreement was terminated and if so, how.

2. What external signs were present that would have put 21st Century and Mink on notice that the Park residences were being serviced by a cable company.

3. Does the Defendant continue to hold a franchise license in Pasco County.

4. Whether the Defendant relied upon the right-a-way and incurred substantial sums upon this reliance.