### CENTEL CABLE TELEVISION COMPANY OF FLORIDA, Plaintiff–Appellee,

v.

### THOS. J. WHITE DEVELOPMENT CORPORATION, St. Lucie West Country Club Estates Associations, Inc., and St. Lucie West Utilities, Inc., Defendants–Appellants.

No. 89–5318.

United States Court of Appeals, Eleventh Circuit.

June 5, 1990.

George P. Ord, David Baker, Michael Pucillo, Elizabeth Maass, Palm Beach, Fla., Wesley R. Harvin, Harvin & Geary, Stuart, Fla., for defendants-appellants.

Terry S. Bienstock, Miami, Fla., for plaintiff-appellee.

Before JOHNSON, Circuit Judge, HILL *, and HENLEY **, Senior Circuit Judges.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's order of February 28, 1989, granting the plaintiff, Centel Cable Television Company of Florida ("Centel"), a permanent injunction guaranteeing access

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

to utility easements in St. Lucie West, a development in southern Florida.

## I. FACTS

### A. Background

St. Lucie West will be a mixed-use development covering 4,600 acres and capable of accommodating 18,000 residences.[1] In addition, the development will house two colleges, a New York Mets spring-training stadium complex, six public schools, hospital and medical facilities, a shopping mall, a hotel and convention center, and industrial and commercial sites. The defendant, Thos. J. White Development Corporation ("White"), is the project's developer.[2]

Centel is a distributor of cable television services in Florida. Centel's national affiliate has between 200 and 300 cable television franchises and 580,000 subscribers. Centel holds a non-exclusive franchise to distribute cable television services in the City of Port St. Lucie, where St. Lucie West is located.

In December 1987, a White affiliate, St. Lucie West Cablevision, entered into a joint venture with MERC communications of Michigan. The joint venture, Lucie West Cablevision Company ("SLW Cablevision"), was to provide exclusive cablevision services to St. Lucie West.[3] SLW Cablevision obtained a non-exclusive franchise to service St. Lucie West from the City of Port St. Lucie on August 3, 1987.

White recorded the plat for St. Lucie West on January 20, 1988. The plat dedicated public utility easements to Florida Power and Light ("FP & L") and Southern Bell for the purposes of installing and maintaining their utilities. The plat also dedicated a "utility easement" to St. Lucie West Utilities, Inc. for the purpose of installing video communications. White's plat provided that all roads within St. Lucie West would be private rights-of-way and dedicated the easements to the defendant St. Lucie West Country Club Estates Association, Inc. White permitted FP & L and Southern Bell to use the private road system in St. Lucie West to gain access to their easements. FP & L and Southern Bell have begun installing their systems using St. Lucie West's roads.

In late July 1988, Centel began using the private roads within St. Lucie West in order to gain access to the dedicated utility easements and install a network of cable television lines. SLW Cablevision had not yet begun installing its cable television lines. On August 2, 1988, Centel attempted to install its cables by following the FP & L and Southern Bell easements. White threatened to impound Centel's truck and told Centel's crew to leave St. Lucie West, which White asserted was private property.[4]

### B. Proceedings in the District Court

On August 9, 1988, Centel filed the present action under the Cable Communications Policy Act of 1984, 47 U.S.C.A. §§ 521–557 ("the Cable Act"),[5] under Fla. Stat.Ann. § 177.091(29) ("the Plat Act"), and under Florida tort law. Centel asked for preliminary and permanent injunctions and damages. On September 12, 1988, the

---

1. At the time of the acts giving rise to this suit, St. Lucie West was in the early stages of development.

2. White has two related entities that are also named as defendants: St. Lucie West Country Club Estates Associations, Inc., and St. Lucie West Utilities, Inc.

3. White had discussed a joint venture with Centel in the fall of 1986. Centel offered White an initial payment of $100,000 for exclusive rights to serve St. Lucie West. White never responded to Centel's offer because the proposal did not give White an equity interest in the venture.

4. The district court found that White threatened to impound Centel's truck if Centel's crew did not leave the premises immediately. This finding is supported by the record and therefore is not clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

5. The Cable Act provides, in part: "Any [government] franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses...." 47 U.S.C.A. § 541(a) (West Supp. 1989).

parties stipulated that neither would lay any cables, or activate, operate, or market their cable systems in St. Lucie West until the court ruled on Centel's motion for an injunction. The stipulation further provided that if Centel succeeded on the merits, both parties would construct their systems for thirty days and then both parties would be free to market their services in St. Lucie West.

In an order dated February 28, 1989, the district court found that White had denied Centel access to St. Lucie West in violation of the Cable Act and that Centel had a right of access under the Cable Act. The district court also held that the Plat Act granted cable companies a right of access to platted utility easements. The court found that by dedicating the roads in St. Lucie West to the St. Lucie West Association, Inc., White had formed a private agreement to restrict access to the public utility easements in St. Lucie West in violation of the Cable Act. The court therefore ordered White to allow Centel access to the public utility easements across the private roads in St. Lucie West.[6] The court rejected White's argument that the Cable Act was unconstitutional under the Takings Clause of the Fifth Amendment.

The district court concluded that Centel had succeeded on the merits of its claim, that Centel would suffer irreparable injury from not installing its cables while the development was under construction, and that granting Centel access to the easements was in the public interest. The court therefore granted Centel a permanent injunction, ordering White to allow Centel access to the easements, and use of roads in St. Lucie West.

In the present appeal, we consider whether the district court erred in holding that Centel has a right of access to the utility easements in St. Lucie West under the Cable Act and the Plat Act. We also consider whether the district court erred in

holding that the Cable Act is constitutional under the Takings Clause. Finally, we consider whether the district court erred in granting Centel a permanent injunction.

## II. STANDARD OF REVIEW

The district court's interpretation of a statute is subject to *de novo* review by this Court. *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1227 (11th Cir.1990). The district court's findings of fact are subject to "clearly erroneous" review in this Court. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## III. ANALYSIS

### A. *Right of Action Under the Cable Act*

■ Section 621(a) of the Cable Act, 47 U.S.C.A. § 541(a), provides as follows:

(1) A franchising authority[7] may award, in accordance with the provisions of this subchapter 1 or more franchises within its jurisdiction.

(2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses....

47 U.S.C.A. § 541(a) (West Supp.1989). In *Centel Cable Television Co. of Fla. v. Admiral's Cove Assoc., Inc.*, 835 F.2d 1359, 1364 (11th Cir.1988), this Court held that section 621(a) of the Cable Act provides cable companies such as Centel with an implied right of action against developers who block construction of cable systems through easements dedicated to compatible uses.

■ White urges this Court to overrule *Admiral's Cove* and rule that there is no implied right of action under the Cable Act. This Court is bound by the determinations

---

**6.** The court also found that because White had allowed FP & L and Southern Bell access to the utility easements across the roads in St. Lucie West, it was estopped from denying Centel the same access.

**7.** The term "franchising authority" includes any governmental agency empowered by federal, state, or local law to grant a franchise. 47 U.S.C.A. § 522.

of prior panels of the Eleventh Circuit until and unless modified by the *en banc* Court. *United States v. Machado*, 804 F.2d 1537, 1543 (11th Cir.1986). Accordingly, even if we disagreed with the holding in *Admiral's Cove*, we would still be compelled to rule that Centel has an implied right of action under the Cable Act.

■ White also argues that even if Centel has a right to construct a cable network through the utility easements in St. Lucie West, the district court erred in holding that Centel has a right to use St. Lucie West's private roads and cross White's private property to reach the easements. The district court held that White could not make private agreements with other utilities, or classify rights-of-way as private, in order to thwart the intent of the Cable Act that cable companies should have access to utility easements. Without the right of passage to and from the utility easements, the court reasoned, the holder of the easement cannot fully enjoy the easement. Such enjoyment, the court held, includes "the installation[,] construction, maintenance[,] and operation of the utility." The court, therefore, held that Centel had a right to use St. Lucie West's "private" roads.

In *Admiral's Cove*, this Court held that Congress intended to forbid any private agreements that would prevent a cable franchise from using dedicated utility easements. *Admiral's Cove*, 835 F.2d at 1362

(citing H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4696).[8] The *Admiral's Cove* Court also found that Congress intended to authorize the cable operator to "piggyback" on easements dedicated to electric, gas, or other utility transmission. *Id.* at 1362 n. 5 (citing H.R.Rep. No. 934 at 59, 1984 U.S.Code Cong. & Admin.News at 4696). In the present case, White's plat and White's agreements with FP & L and Southern Bell allowing those utilities to use the private roads in St. Lucie West were designed to control access to the dedicated utility easements. Accordingly, White's allowing FP & L and Southern Bell access to St. Lucie West's private roads while prohibiting Centel access to those roads is a private agreement in violation of the Cable Act.[9]

**B. *Constitutionality of the Cable Act***

■ White also argues that the Cable Act, as interpreted by the *Admiral's Cove* Court, violates the Takings Clause of the Fifth Amendment. White argues that under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), Congress's providing cable companies with a right of action to install cables in White's "private" easements is a *per se* violation of the Takings Clause. *See id.* at 426, 102 S.Ct. at 3171 (holding state statute forcing landlords to allow installation of cable television cables

8. The House Report provides: "Any private arrangements which seek to restrict a cable system's use of such easements or rights-of-way which have been granted to other utilities are in violation of this section and not enforceable." H.R.Rep. No. 934 at 59, 1984 U.S.Code Cong. & Admin.News at 4696.

9. The Florida courts hold that the burden of an easement upon a servient estate should not be any greater than that "'reasonably necessary and contemplated by the parties at the time of [its] initial acquisition.'" *AC Assocs. v. First Nat'l Bank of Fla.*, 453 So.2d 1121, 1126 (Fla. Dist.Ct.App.1984) (quoting *Crutchfield v. Sebring Realty Co.*, 69 So.2d 328, 330 (Fla.1954)); *see also Crutchfield*, 69 So.2d at 330 (every easement carries with it by implication the right, sometimes called a secondary easement, of doing what is reasonably necessary for full enjoyment of the easement itself). In the present

case, White and FP & L, Southern Bell, and SLW Utilities clearly contemplated that the platted utility easements included rights of access across White's land for the purposes of installation and maintenance of the utility lines. There was testimony at trial that it would be impracticable to lay a utility line without leaving the 10 foot and 20 foot wide utility easements on White's plat for St. Lucie West. Accordingly, it was reasonably necessary and contemplated by the parties that rights of access would be attached to the utility easements. *AC Assocs.*, 453 So.2d at 1126. It would be inconsistent with the policy of the Cable Act to hold that cable operators cannot piggyback on these rights of access granted to other utilities where those rights are necessary to full enjoyment of the related easements. *See Admiral's Cove*, 835 F.2d at 1362 n. 5. Accordingly, Centel has the same rights of access as the other utilities.

for nominal charge violates the Takings Clause).

*Admiral's Cove*, however, rejected this argument in the following statement:

> Admiral's Cove assumes that Congress could not authorize a cable franchise to use utility easements because such an authorization would be an unconstitutional taking under *Loretto....* Since most developers voluntarily grant easements for use by utilities, however, Congress may force the developer to allow a cable franchise to use the easement without offending the taking[s] c[l]ause of the Constitution. Such "voluntary" action by developers may be an integral part of zoning procedures or the obtaining of necessary building permits. However obtained, once an easement is established for utilities it is well within the authority of Congress to include cable television as a user.

*Admiral's Cove*, 835 F.2d at 1363 n. 7 (citations omitted). Accordingly, White's Takings Clause argument must be rejected under *Admiral's Cove.*

### C. *Right of Action Under the Plat Act*

■ Florida amended the Plat Act, effective October 1, 1987, to add the following provision:

> All platted utility easements shall provide that such easements shall also be easements for the construction, installation, maintenance, and operation of cable television services; provided, however, no such construction, installation, maintenance, and operation of cable television services shall interfere with the facilities and services of an electric, telephone, gas, or other public utility.

Fla.Stat.Ann. § 177.091(29) (West Supp. 1989). The district court found that by this amendment the Florida legislature intended to grant cable companies a right of access to the platted public utility easements in a development. White argues that the district court erred in its interpretation because the Plat Act, when originally enacted in 1945, was intended to provide information to land purchasers, and not to benefit utilities.

The amendment to the Plat Act clearly contemplates cable companies building cable networks along public utility easements. The provision states that cable companies shall share in the easements dedicated to utilities, making clear the Florida legislature's intention to grant cable companies a right of access to those easements.[10] Moreover, White's interpretation of the amended Plat Act makes little sense. Simply writing on the plat that utility easements include cable television easements without allowing cable companies to use those easements would compel developers to include meaningless language on recorded plats. Accordingly, White's argument is meritless.

### D. *Irreparable Injury*

■ A grant of an injunction may be reversed only for an abuse of discretion by the district court. *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir.1986). The district court found that if Centel had to wait until St. Lucie West was fully developed before installing its cables, Centel would incur significant added expense in installing its cables,[11] a loss of good will, a loss of competitive advantage with other cable operators, and a loss of subscribers.[12] The court concluded that Centel had dem-

---

**10.** In *Gulf Properties of Ala., Inc. v. Southern Bell Tel. and Tel. Co.*, 346 So.2d 1085 (Fla.Dist. Ct.App.1977), a Florida appellate court held that where a state statute declared a public policy of encouraging the construction and maintenance of telephone lines along public roads, telephone companies had a right of access, and a developer could not reserve from road easements the right to install telephone lines.

**11.** The district court found that if a cable company enters into a development at the beginning of construction, it is able to follow directly

behind the other utilities and lay its cables before there are lawns, driveways, and other improvements to the lots. If improvements exist at the time that a cable operator lays its cables, the cable operator must pay to restore the improvements to their original condition.

**12.** The district court found that once a homeowner had wiring installed for one system, he would be unlikely to subscribe to another cable company.

onstrated a danger of irreparable injury and entered a permanent injunction. White does not challenge these factual findings, but merely argues that Centel's claim of impending irreparable injury is "speculative." Because the district court's findings are not clearly erroneous, we hold that the court did not abuse its discretion in granting Centel an injunction.[13]

## IV. CONCLUSION

We AFFIRM the district court.

HENLEY, Senior Circuit Judge, concurring:

I agree with the majority that we are bound by the holding of *Centel Cable Television Co. of Fla. v. Admiral's Cove Assoc., Inc.*, 835 F.2d 1359 (11th Cir.1988), that cable companies have an implied right of action under section 621(a) of the Cable Act against private developers who block construction of cable systems through easements dedicated to compatible uses and that enforcement of this right does not violate the fifth amendment takings clause. Also I agree that the *Admiral's Cove* reasoning dictates that a cable company have a right to cross the developer's roads and property in order to have access to utility easements when the developer has given this right to other utilities. Because Centel has succeeded on the merits under *Admiral's Cove* and has demonstrated the absence of an adequate remedy at law, it is entitled to permanent injunctive relief.[1]

Notwithstanding trepidation inherent in my status as a visiting judge, I write separately to express concern over the *Admiral's Cove* treatment of the takings issue. The *Admiral's Cove* court relied upon *FCC v. Florida Power Corp.*, 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987), to conclude that "[s]ince most developers voluntarily grant easements for use by utilities,

... Congress may force the developer to allow a cable franchise to use the easement without offending the taking[s] c[l]ause of the Constitution," 835 F.2d at 1363 n. 7.

In *Florida Power*, the Supreme Court held that the Pole Attachments Act, which authorized the Federal Communications Commission under certain conditions to regulate the rates that utility-pole owners charged cable companies for space on the poles, did not effect an unconstitutional taking of the pole owners' property. The pole owners argued that the case was governed by *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), which held that a New York statute that required landlords to allow installation of cable television facilities on their apartment buildings resulted in a per se taking of the landlords' property requiring just compensation. The *Florida Power* Court distinguished *Loretto* by noting that whereas "the statute ... in *Loretto* specifically *required* landlords to permit permanent occupation of the property by cable companies," the pole owners were not required by the Pole Attachments Act to allow installation of the cable on the poles. *See Florida Power*, 480 U.S. at 251, 107 S.Ct. at 1111 (emphasis in original). Reasoning that "[t]his element of required acquiescence is at the heart of the concept of occupation," the *Florida Power* Court concluded that the pole owners had voluntarily permitted the physical occupation and that therefore the regulation was not a per se taking as in *Loretto. See id.* 480 U.S. at 252–53, 107 S.Ct. at 1112.

Notwithstanding the *Admiral's Cove* panel's reliance on *Florida Power*, I do not believe that this Supreme Court case decides the takings issue at stake in the present case. Unlike the pole owners in *Florida Power*, the developer here has never voluntarily permitted the cable company itself to occupy the property. Instead, the

---

13. Centel apparently laid some of its cable one to three feet outside of the easement in a few places along a utility easement. White can prevent any such encroachments through a state court action for trespass. *See Florida Power Corp. v. Scudder*, 350 So.2d 106, 109 (Fla.Dist.Ct. App.1977).

1. I express no opinion on the question of whether the Florida Plat Act grants to cable companies a right of access to platted public utility easements in a development because we need not reach this question in order to decide this case.

**912**

developer has given permission to *other* utilities and has deliberately undertaken to exclude the cable company.

If the developer in this case had already granted the utility easements when the Cable Act was enacted, then the situation here might be strikingly similar to that present in *Loretto.* Having already granted the utility easements, the developer would have no power to prevent the installation of cable lines on its property. This situation would be analogous to the facts in *Loretto,* in which the landlords, having built and rented out apartment buildings, had no practical means to prevent the installation of cable equipment on those buildings.[2]

Here, however, the developer had not granted any utility easements when the Cable Act became law. Thus, the Act could be construed not as requiring the developer's acquiescence in the installation of cable equipment, as was the case in *Loretto,* but rather as merely placing a condition on the developer's future development of his property. These facts are more analogous to those in *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), in which a state land-use commission had granted a permit to the plaintiffs to construct a beachfront bungalow on the condition that they grant the public an easement to pass along the beach on their property. The *Nollan* Court held that the easement condition was an unconstitutional taking, reasoning that the commission's imposition of this condition was not a legitimate exercise of its regulatory power because the condition did not substantially further governmental purposes that would justify denial of the permit.

It would require a more extensive analysis of the Supreme Court's takings jurisprudence than that present here to resolve the complex issue present in this case. Needless to say, I do not think that *Admiral's Cove* adequately addressed the takings concerns in the one footnote that it

devoted to this topic. I would urge this circuit, by rehearing en banc if necessary, at least to consider providing a better rationale for the constitutional holding of *Admiral's Cove.*

---

**2.** The *Loretto* court acknowledged that "the landlord could avoid the requirements [that he allow the cable installation] ... by ceasing to rent the building to tenants," but concluded that "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." 458 U.S. at 439 n. 17, 102 S.Ct. at 3178 n. 17.