**CABLE HOLDINGS OF GEORGIA, INC., Plaintiff–Appellee,**

v.

**McNEIL REAL ESTATE FUND VI, LTD., Woodsong Apartments d/b/a Lakes Apartments, Robert A. McNeil Corporation, ODC Communications Corporation, Woodsong Associates, Ltd., Defendants–Appellants.**

No. 91–8032.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1993.

Deborah C. Costlow, Thomas C. Power, Winston & Strawn, Washington, DC, for defendants-appellants.

Peter Crane Canfield, Dow Lohnes & Albertson, Atlanta, GA, Howard Graff, Neal S. Barlia, Baer Marks & Upham, New York City, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, and CARNES, Circuit Judges.[*]

PER CURIAM:

On April 9, 1992, through clerical error, an order issued denying appellee's petition for rehearing and suggestion of rehearing en banc. The order was issued in error because the mandate had been withheld and the court had not yet been polled on the suggestion of rehearing en banc. A poll now having been conducted at the request of a member of this court in active service on the reconsideration of this case en banc, and a majority of the judges in active service not having voted in favor of it, the appellee's petition for rehearing and suggestion of rehearing en banc is DENIED.

TJOFLAT, Chief Judge, dissenting:

I respectfully dissent from the court's decision to deny the petition for rehearing en banc for the following two reasons. First, as I discuss in part II, this case presents the issue of whether the Fifth Amendment's Just Compensation Clause is self-executing. The panel, by proceeding as if the clause is not self-executing, has established a rule with far-reaching implications. According to the panel—and apparently now a settled matter in this circuit—state and federal statutes that operate to take private property but which do not explicitly provide for just compensation

---

[*] Judge Black recused herself and did not participate in this decision.

are unconstitutional. This approach abrogates in this circuit Supreme Court precedent holding that the Just Compensation Clause is self-executing and, therefore, that legislation need not explicitly provide for just compensation in order to be constitutional.

Second, as discussed in part III, while the panel reaches its result by distinguishing two Eleventh Circuit decisions, *Centel Cable Television Co. v. Thos. J. White Development Corp.*, 902 F.2d 905 (11th Cir.1990), and *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir.1988), it does so based on an erroneous interpretation of the facts in these cases. On the face of its opinion, therefore, the panel appears fairly to read and distinguish our precedent. Yet, when the panel's interpretations are laid along side the facts of *Thos. J. White* and *Admiral's Cove*, the force of these prior decisions becomes apparent. Correctly represented, our prior cases cannot be distinguished. Moreover, had the panel followed *Thos. J. White* and *Admiral's Cove*, it would have been compelled to reach a different result. I believe the en banc mechanism was designed precisely for these circumstances. I therefore dissent from the court's denial of rehearing en banc.

## I.

### A.

Section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559 (1988) (the Cable Act),[1] grants cable television franchises the right to access certain rights-of-way and easements that are necessary to construct cable sys-

tems. This case presents the issue of whether this right extends to existing cable, telephone, and power easements "which reach and access the interiors of [a developer's] buildings." *Cable Holdings of Ga., Inc. v. McNeil Real Estate Fund VI, Ltd.*, 953 F.2d 600, 603 (11th Cir.1992) (*McNeil III*), cert. denied, —— U.S. ——, 113 S.Ct. 182, 121 L.Ed.2d 127 (1992). This issue raises significant concerns for developers who desire to control the accessibility of cable services on their properties and for cable franchisees who wish to avoid the economic consequences of such control.

McNeil Real Estate Fund VI, Ltd., Woodsong Associates, Ltd., and Robert A. McNeil Corporation (collectively McNeil), are the owners of two apartment complexes. Cable Holdings of Georgia, Inc. (Cable Holdings) claimed a right of access under section 621(a)(2) to easements granted by McNeil to specific utility companies and a competing video programming provider serving the complexes.[2] McNeil rejected Cable Holdings' claimed right of access, at least to the extent that Cable Holdings claimed a right to access the interiors of McNeil's multiple-unit residences. Cable Holdings filed suit in the United States District Court for the Northern District of Georgia seeking declaratory and injunctive relief to gain access to the easements.[3] On October 10, 1986, the district court granted partial summary judgment for Cable Holdings, finding that the Cable Act provided a right of access to all compatible easements. *Cable Holdings of Ga., Inc. v. McNeil Real Estate Fund VI, Ltd.*, 678 F.Supp. 871, 875 (N.D.Ga.1986) (*McNeil I*). On September 28, 1989, the court considered "whether [compatible] easements exist upon which

---

**1.** The Cable Act was recently amended by the Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385 (Oct. 5, 1992). These amendments do not affect the issues presented in this case.

**2.** Cable franchises have an implied right of action against developers to gain access to easements specified in § 621(a). *Admiral's Cove*, 835 F.2d at 1364; *see also Thos. J. White*, 902 F.2d at 908.

**3.** Cable Holdings' complaint stated claims under the Cable Act, Sherman Antitrust Act, and Geor-

gia property and contract law, seeking preliminary and permanent injunctive relief, declaratory relief, and damages. Only the district court's grant of summary judgment on the Cable Act claims were addressed on appeal. For a more detailed exposition of the facts see *McNeil III*, 953 F.2d at 602–04; *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.*, No. 1:85–CV–3712–RCF, 1989 WL 222739 (N.D.Ga. Sept. 28, 1989); and *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.*, 678 F.Supp. 871 (N.D.Ga.1986).

plaintiff may piggyback its system." *Cable Holdings of Ga., Inc. v. McNeil Real Estate Fund VI, Ltd.*, No. 1:85–CV–3712–RCF, 1989 WL 222739, at *1 (N.D.Ga. Sept. 28, 1989) *(McNeil II)*. The court found that McNeil had granted easements extending into the interiors of the apartment complexes to a competing video programming provider, and that "under the Cable Act, [Cable Holdings could] piggyback its cable system along [the competing video programming provider's] system." *Id.* at *2.

On appeal, the panel addressed the district court's interpretation of section 621(a)(2). Finding that the Cable Act did not authorize cable franchises to burden the relevant easements, the panel reversed.

### B.

The resolution of this case rests on the reach of section 621(a)(2). Both the district court and the panel identified the same language from section 621(a)(2) as the focal point of the controversy: "[a]ny franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which [are] within the area to be served by the cable system and which have been dedicated for compatible uses...." 47 U.S.C. § 621(a)(2). Hoping to carve the relevant easements out of section 621(a)(2)'s scope, McNeil argued before the district court that (1) section 621(a)(2) grants rights only to dedicated public easements, (2) the easements involved were non-dedicated private easements, and (3) even if easements existed that reached into the apartment buildings, such easements would be private easements outside of section 621(a)(2)'s scope. The district court summarily rejected McNeil's argument, stating that "defendants have not pointed to any legislative history supporting their strained interpretation of section 621(a)(2)." *Id.* at 873.[4] The district court, however, believed that

[i]f Congress did not provide for just compensation for the taking of property that might occur when a cable operator exercises its right of access, then section 621(a)(2) either (1) would be unconstitutional, or (2) [could not] be found to grant the access right plaintiff claims it does.

*Id.* at 874 n. 3. After reviewing the Cable Act's statutory language and legislative history, the district court held that the Cable Act provided for the claimed right of access and just compensation. *Id.* at 874. In its November 27, 1990 order, the district court, relying on *Thos. J. White*, 902 F.2d at 907, held that no compensation was due.

### C.

The panel's analysis began with the canon of construction that requires courts to "avoid any interpretation of a federal statute which raises serious constitutional problems or results in an unconstitutional construction." *McNeil III*, 953 F.2d at 604. Applying this canon, the panel identified "serious questions regarding the potential unconstitutional taking of [the developer's] private property" if section 621(a)(2) were construed to reach private easements. *Id.* Faithful to the canon, the panel diligently strove to avoid what it considered an unconstitutional construction of the Cable Act. As discussed below, however, the panel misunderstood the nature of the Just Compensation Clause, incorrectly and unnecessarily leading it to address its just compensation issue.

### II.

The panel believed that refraining from reaching the just compensation issue was necessary to avoid an unconstitutional construction of the Cable Act. *McNeil III*, 953 F.2d at 604. This canon of construction rests on the presumption that legislators intend to promulgate only constitutional legislation.[5] The panel sought to uphold

---

**4.** When the district court originally addressed this concern in 1986, our decisions in *Thos. J. White* and *Admiral's Cove* did not exist.

**5.** The Supreme Court has noted that

[t]his approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume

this principle by construing section 621(a)(2) to avoid a taking of private property. This approach was necessary only if the failure of the Cable Act explicitly to provide for compensation would render the statute unconstitutional.[6] Yet, even if a taking would result, section 621(a)(2) would not be unconstitutional. The panel, therefore, erred in its initial premise and should not have applied the canon to limit the section's operation. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) ("Of course, the fact that courts should not decide constitutional issues unnecessarily does not permit a court to press statutory construction 'to the point of disingenuous evasion' to avoid a constitutional question." (quoting *United States v. Locke,* 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985)).

### A.

In applying this canon of construction, the panel focused on limiting the application of section 621(a)(2) to avoid a Fifth Amendment taking. The panel stated that "[w]hen the government appropriates an owner's right to exclude another's physical presence without paying the owner just compensation, the government violates the Takings Clause." *McNeil III,* 953 F.2d at 604–05. Thus, the panel "search[ed] for a construction of the Cable Act more consis-

tent with the demands of the Takings Clause." *Id.* at 605.

The panel recognized that under the Supreme Court's decision in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), governmental burdens on private property are permissible if supported by a valid public purpose and (if a Fifth Amendment taking occurs) just compensation is provided. *Id.* at 604–05. The panel, however, did not follow *Loretto.* Instead, overlooking *Loretto's* message that burdens on private property are permissible, the panel believed that the Cable Act would be unconstitutional if it operated to take private property.[7] For instance, the panel stated that

> [g]iven that the government may not appropriate a property owner's right to exclude, the takings issue created by the district court's interpretation is whether the government may appropriate the right to exclude whenever the owner selectively relinquishes that right by permitting a compatible occupation.

We decline to reach this takings issue today. We note only that *if Section 621(a)(2) authorized such an occupation by a franchised cable company, this court would have substantial reservations regarding the constitutionality of the Cable Act.* Crucial to our trepida-

---

that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.
*DeBartolo v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397–98, 99 L.Ed.2d 645 (1988). The Supreme Court has applied this canon of construction to the Just Compensation Clause to avoid potentially unconstitutional constructions of a statute. *See United States v. Security Indus. Bank,* 459 U.S. 70, 92, 103 S.Ct. 407, 414, 74 L.Ed.2d 235 (1982); *Blanchette v. Connecticut Gen. Ins. Corps.,* 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974); *ICC v. Oregon–Washington R.R. & Navigation Co.,* 288 U.S. 14, 40–42, 53 S.Ct. 266, 274, 77 L.Ed. 588 (1933); *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 345–46, 48 S.Ct. 194, 197–98, 72 L.Ed. 303 (1928); *United States v. Delaware & Hudson Co.,* 213 U.S. 366, 400–02, 407–08, 29 S.Ct. 527, 529–30, 53 L.Ed. 836 (1909); *see also Cable Investments, Inc. v. Woolley,* 867 F.2d 151,

159–60 (3rd Cir.1989) (applying this rule of construction to the Cable Act).

**6.** There are two applications of this canon: (1) avoiding "serious constitutional questions" and (2) avoiding "unconstitutional constructions" of statutes. The panel's emphasis throughout the opinion on the potential unconstitutionality of the Cable Act, *see infra* at note 9 and accompanying text, and the ease with which it resolved the constitutional issue of whether a taking occurs "whenever the owner selectively relinquishes [the right to exclude] by permitting a compatible occupation," *McNeil III,* 953 F.2d at 605; *see id.* at 602, 604–05, indicate that the panel did not seek merely to avoid a "serious constitutional question."

**7.** *Thos. J. White* also appears to have misread *Loretto. See Thos. J. White,* 902 F.2d at 909–10. Judge Henley's concurrence in *Thos. J. White* questioned *Admiral's Cove's* takings analysis and urged the court to review the case en banc. *Id.* at 911–12 (Henley, J., concurring).

tion is the fact that the district court's construction of Section 621(a)(2) effectively permits exactly the same occupation *found impermissible*[8] in *Loretto*—the permanent physical presence of a franchised cable company inside private apartment buildings against the express wishes of the property owner.... We' doubt whether the government may so condition a property owner's right to exclude.

*Id.* at 605 (emphasis added).[9] Yet, while courts often refer to "unconstitutional takings," not all takings are per se unconstitutional. Rather, the Just Compensation Clause mandates that, when a taking occurs, just compensation must be provided. "Statutory recognition [of the obligation to provide just compensation is] not necessary. A promise to pay [is] not necessary. Such a promise [is] implied because of the duty to pay imposed by the [fifth] amendment." *Jacobs v. United States*, 290 U.S.

13, 16, 54 S.Ct. 26, 27, 78 L.Ed. 142 (1933). In other words, the Just Compensation Clause is self-executing. *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987); *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).[10] Absent explicit statutory language to the contrary, confiscatory legislation inherently provides for just compensation.

In *First English*, the Supreme Court reviewed California's refusal to recognize an inverse condemnation action for a temporary regulatory taking resulting from the invalidation of a zoning ordinance. The regulation did not provide for compensation. The Court found that the Just Compensation Clause "was designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper

---

**8.** As discussed below, the *Loretto* Court did not find the reach of the New York Statute "impermissible." Rather, the Court held that compensation was due.

The Cable Act's legislative history acknowledges the Supreme Court's decision in *Loretto* but also incorrectly reads that decision as "*striking down*" a New York state statute affording cable operators access to premises on the grounds that there was no provision in this statute for granting affected property owners just compensation for the use of their property." H.R.Rep. No. 934, 98th Cong., 2d Sess. 80–81 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4717–18 (emphasis added).

**9.** *See also McNeil III,* 953 F.2d at 602 ("our independent review of the relevant sources indicates that the admittedly ambiguous legislation at issue in this case is capable of being construed constitutionally"); *id.* ("Congress does not have the constitutional power to authorize [an uncompensated] permanent physical occupation of an owner's private property. That principle would seem to apply *even when* a property owner has privately allowed other occupations which are 'compatible' with a government-sanctioned invasion."); *id.* at 604 ("The district court's construction of Section 621(a)(2) creates serious questions regarding the potential unconstitutional taking of McNeil's private property. Therefore, this court is wary of such an interpretation."); *id.* ("[i]f Section 621(a)(2) authorized [Cable Holdings] to construct its cable system on McNeil's private property regardless of the presence of any compatible easements, we would have little difficulty in finding the provision *in violation of the Fifth Amend-*

*ment.* After all, under such facts Section 621(a)(2) would be indistinguishable from the New York Statute analyzed in *Loretto.*" (emphasis added)).

**10.** *See also San Diego Gas & Elec. Co. v. City of San Diego,* 450 U.S. 621, 654, 101 S.Ct. 1287, 1305, 67 L.Ed.2d 551 (1981) ("This Court has consistently recognized that the just compensation requirement in the Fifth Amendment is not precatory: once there is a 'taking,' compensation *must* be awarded."); *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1199 n. 24 (5th Cir. Unit A May 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982) (acknowledging " 'the self-executing character of the [Just Compensation Clause]' " (quoting *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980)); Geoffrey L. Harrison, Comment, *The Endangered Species Act and Ursine Usurpations: A Grizzly Tale of Two Takings,* 58 U.Chi.L.Rev. 1101, 1107–08 (1991) ("The Takings Clause does not direct courts to invalidate legislation on the grounds that the legislation has disproportionate impact; it requires only that compensation be paid. The legislation remains valid and effective."). *But cf. Duquesne Light Co. v. Barasch,* 488 U.S. 299, 308, 109 S.Ct. 609, 616, 102 L.Ed.2d 646 (1989) ("If [a regulated utility's] rate does not afford sufficient compensation, the State has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments."); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601–02, 55 S.Ct. 854, 869, 79 L.Ed. 1593 (1935) (voiding federal statute for failing to provide for just compensation).

interference amounting to a taking." *First English*, 482 U.S. at 315, 107 S.Ct. at 2385–86. Thus, even though the ordinance at issue in *First English* did not provide for just compensation, the Supreme Court remanded for a determination of the compensation due. *Id.* at 321–22, 107 S.Ct. at 2389. Unlike the *McNeil III* panel, the Court did not limit the ordinance's language nor did it suggest that the ordinance was unconstitutional because it failed to provide explicitly for payment of just compensation.

*Loretto* further illustrates this point. A New York statute provided cable companies access to apartment buildings. The plaintiff, a landlord, challenged the constitutionality of the statute, sought damages for trespass, and sought an injunction against the further operation of the statute. The statute contained a "damages" section remarkably similar to the Cable Act's sections 621(a)(2)(A)–(C):

1. No landlord shall

a. interfere with the installation of cable television facilities upon his property or premises, except that a landlord may require:

i. that the installation of cable television facilities conform to such reasonable conditions as are necessary to protect the safety, functioning and appearance of the premises, and the convenience and well-being of other tenants;[11]

ii. that the cable television company or the tenant or a combination thereof bear the entire cost of the installation, operation or removal of such facilities;[12] and

iii. that the cable television company agree to indemnify the landlord for any damage caused by the installation, operation or removal of such facilities.[13]

*Loretto*, 458 U.S. at 423 n. 3, 102 S.Ct. at 3169 n. 3 (quoting New York Exec.Law § 828 (McKinney Supp.1981–82)). The *McNeil III* panel's analysis suggests that the Supreme Court had only two available options in reviewing the New York statute: either invalidate the statute or narrow the statute's language. Yet, the Court directly addressed the takings question, found that the statute effected a taking, and followed a third option by remanding the case for a judicial determination of the compensation due. *Id.* at 442, 102 S.Ct. at 3179; *see also Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893) ("when the taking has been ordered, then the question of compensation is judicial"). Significantly, as in *First English*, the *Loretto* Court did not hold that the statute was unconstitutional because it failed specifically to provide for just compensation. Rather, the Court held that the statute triggered the Just Compensation Clause, obligating the state to provide the compensation due to the property owner.

As the foregoing analysis demonstrates, whether the Cable Act contains express provisions for payment of just compensation is irrelevant; the judiciary will enforce the Fifth Amendment's just compensation requirement.[14] The panel, therefore, was

---

11. Compare this to 47 U.S.C. § 541(a)(2)(A): that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system.

12. Compare this to 47 U.S.C. § 541(a)(2)(B): that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both.

13. Compare this to 47 U.S.C. § 541(a)(2)(C): that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

14. The self-executing nature of the clause does not, however, preclude substantive and procedural challenges to governmental action. *See, e.g., Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 245, 104 S.Ct. 2321, 2331, 81 L.Ed.2d 186 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."); *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (requiring full procedural protections); *FCC v. Florida Power Corp.*, 772 F.2d 1537 (11th Cir.1985) (voiding statute that unconstitutionally constrained judicial determination of just compensation), *rev'd on other grounds by* 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987); *cf. Beattie v. Shelter Properties, IV*, 457 So.2d 1110, 1113 (Fla.Dist.Ct.App. 1984) (invalidating statute that prohibited pay-

not presented with the constitutional problem it sought to avoid.

Ironically, while the panel intended to apply the canon to avoid the just compensation question, what it did was decide a constitutional issue of more significant import. The panel's holding that the Just Compensation Clause is not self-executing reaches every state and federal statute that operates to take private property.[15] Even if we were to assume counter-factually that the Supreme Court has not held that the Just Compensation Clause is self-executing, the panel should have applied the canon to avoid resolution of this significant constitutional issue. Moreover, as I demonstrate in part II.B., the panel did not need to address the just compensation issue at all.

### B.

The panel did not recognize the significance of Cable Holdings' request for equitable relief, an injunction. In a suit for an injunction, the restraints imposed by the Just Compensation Clause can only arise after the trial court has determined that the plaintiff is entitled to relief. At that point, the maxim "he who seeks equity must do equity" comes into play. *See generally* 2 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 385, at 51 (Spencer W. Symons ed., 5th ed. 1941). If the injunctive relief effects a taking of the defendant's property, the trial court may condition its relief by requiring the plaintiff to pay just compensation as measured by takings jurisprudence.

In *Lacy v. United States*, 216 F.2d 223 (5th Cir.1954),[16] the Tennessee Valley Authority (TVA) sought an injunction requiring a property owner to remove certain structures within the path of a transmission line extending across the property owner's land. At the time the transmission line was constructed, TVA did not have a valid easement. The property owner, however, stood by "without protest while the transmission line was being constructed." *Id.* at 225. In addressing the availability of equitable relief to TVA, the court stated that

> [t]he Government when applying for relief in a court of equity is as much bound to do equity as is a private litigant. "When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." It is true that that principle cannot be pressed to the extent of waiving the sovereign immunity to suit by way of counterclaim. The Government, however, is still bound to do equity and, as a condition precedent to relief in this case, either to agree upon and pay to the property owner such compensation as it may owe him or, failing such agreement, to file the necessary proceedings for the ascertainment of such compensation.

*Id.* at 225–26 (citations omitted). Obviously, courts sitting in equity must tailor their relief based on the particular circumstances presented. In *Lacy*, TVA had wrongfully occupied the property owner's land without providing just compensation. TVA stood on weak ground when it sought an injunction to protect its illegally obtained easement. Before equity would be done in favor of TVA, it had to do equity—that is, to make the property owner whole. *See id.* at 226; *cf. Jacobs v. United States*, 239 F.2d 459, 461–62 (4th Cir.1956), *cert. denied*, 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed.2d 666 (1957) (requiring government to perform on contract as condition precedent to granting equitable relief). Importantly, the district court fashioned its relief as an

---

ment of just compensation). No such challenges are presented in this case.

**15.** The panel does not explicitly mention the self-executing nature of the Just Compensation Clause. The panel's analysis, however, only makes sense if so construed. *See supra* note 9 and accompanying text; *see also Thos. J. White*, 902 F.2d at 909–10 (addressing the "constitutionality" of the Cable Act based on an alleged "*per se* violation of the Takings Clause").

**16.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

exercise of its equity powers; the property owner did not present a counterclaim for just compensation.[17]

In *Lacy,* the court required TVA to "do equity" by paying just compensation. Even if TVA had previously taken the property, the equitable nature of TVA's claim did not require a constitutional determination of just compensation. The court simply found that just compensation provided the appropriate measure of relief.

In this case, Cable Holdings seeks an injunction enforcing an alleged right of access under the Cable Act to existing easements. The district court first determined that such a right of access existed. Cable Holdings was therefore entitled to equitable relief. To secure the court's equitable relief, however, Cable Holdings needed to satisfy the court that it would do equity.[18]

In equity, takings jurisprudence does not arise as a constitutional issue. Here, the district court, sitting as a court of equity fashioning an award of equitable relief, had the power to require Cable Holdings to compensate McNeil for any damage, including property loss, resulting from the enforcement of the court's award. In other words, the district court could have granted McNeil the relief it sought without resorting to the Just Compensation Clause. The panel, therefore, unnecessarily construed the statutory language to avoid its Fifth Amendment takings issue.

### III.

Having narrowed section 621(a)(2)'s language to avoid its takings issue, the panel was confronted with binding Eleventh Circuit precedent which required a result contrary to that which it had reached. The panel declined to follow this precedent. Instead, the panel, after misreading the facts of *Thos. J. White* and *Admiral's Cove,* concluded that its "construction of the Cable Act is consistent with our prior cases in this area." *McNeil III,* 953 F.2d at 606. The panel could not have distinguished these cases had it properly construed their facts.

### A.

In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), we held that the precedent set by our panels binds all subsequent panels; only when the court sits en banc can precedent be overruled.[19] We stated that

[t]he various circuits differ somewhat in the extent to which they treat their own decisions as binding on themselves. Some appear at times to treat their own decisions as merely persuasive; others by rule or practice permit one panel to overrule another after prior notice to all judges of what is proposed, followed by no objection. The old Fifth [Circuit, our predecessor court,] followed the absolute rule that a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc. The Eleventh Circuit decides in this case that it chooses, and will follow, this rule.

*Id.* at 1209–10.[20] To do otherwise, we explained, would "be inconsistent with the

---

**17.** In fact, such a counterclaim would not be ripe until after the entry of the injunction and after the defendant made an unsuccessful demand for compensation. *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985).

**18.** McNeil did not seek an award of just compensation as a precondition to issuance of the injunction. Rather, McNeil sought to defeat Cable Holdings' claim altogether by arguing that the Cable Act would be unconstitutional if it effected a taking. The district court determined *sua sponte* that the appropriate remedy for any taking would be just compensation.

**19.** Of course, intervening changes in the law may make a decision obsolete. *See Lufkin v. McCallum,* 956 F.2d 1104, 1107 (11th Cir.1992) (declining to follow panel's holding because of subsequent Supreme Court decision), *cert. denied,* —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); *cf. Tucker v. Phyfer,* 819 F.2d 1030, 1035 n. 7 (11th Cir.1987) (declining to follow prior panel that clearly failed to consider controlling Supreme Court precedent).

**20.** On the day the old Fifth Circuit split into the Eleventh Circuit and the new Fifth Circuit, the judges of this court found this policy so vital to the orderly administration of justice, that in their very first case, *Bonner,* they convened en

methodology of orderly administration of justice." *Id.* at 1210; *see also Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1510 (11th Cir.1987) (en banc) ("Judicial precedence serves as the foundation of our federal judicial system. Adherence to it results in stability and predictability." (internal quotations omitted)), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988).

Disregarding *Bonner*'s mandate, the panel in this case has refused to heed our precedent. I believe we should rehear this case en banc to uphold *Bonner*'s objective of ensuring an orderly administration of justice.[21]

### B.

The panel recognized that *Thos. J. White* and *Admiral's Cove* "contain broad language" that could require it to affirm the district court. *McNeil III*, 953 F.2d at 609 n. 9. Yet, the panel reversed the district court, claiming to limit *Thos. J. White* and *Admiral's Cove* to their facts. The panel's misunderstanding of the facts of these cases engendered its departure from precedent.

The panel distinguished *Thos. J. White* and *Admiral's Cove* based on the nature of the easements involved. It observed that in both *Thos. J. White* and *Admiral's Cove* the developer of the property (1) "dedicated utility easements by recording (with the appropriate government authority) plats showing the corridors of land available for general utility use," *McNeil III*, 953 F.2d at 608, and (2) "was required by Florida law to dedicate these corridors of land for general utility use," *id.* (citing Fla.Stat. §§ 177.081 & 177.091(29) (1991)). Based on these two distinctions, the panel concluded that "[i]n both [prior] cases, we determined that these utility easements—dedicated to the public for general utility use—were

precisely the types of easements accessible by a franchised cable company pursuant to Section 621(a)(2)." *Id.* Thus, the panel found that *Thos. J. White* and *Admiral's Cove* did not consider whether the Cable Act required access to purely private easements dedicated to use by specific utilities.[22] "Accordingly, [the panel] expressly limit[ed] *Thos. J. White* and *Admiral's Cove* to the facts involved in those cases," *id.* at 609 n. 9, thereby freeing itself to interpret section 621(a)(2) on a clean slate.

Were the panel's observations correct, I would agree that *Thos. J. White* and *Admiral's Cove* were distinguishable. Yet, the facts of these cases, and the Florida laws upon which the panel relied, refute the panel's grounds for distinguishing our precedent. Absent a valid distinction, the panel was bound to apply our precedent and, therefore, to affirm the district court.

### 1.

The panel observed that in both *Thos. J. White* and *Admiral's Cove* the relevant easements were dedicated for general utility use. *See McNeil III*, 953 F.2d at 602 (dedicated for "general use"), 605–06 (dedicated for "general utility use"), 610 (same). The facts presented in the published opinions, as well as the briefs and relevant record excerpts in these cases, however, directly contradict this conclusion.

*Admiral's Cove*, the first Eleventh Circuit decision interpreting section 621(a)(2), held that cable franchises have an implied right of action under section 621(a)(2). The court described the nature of the easements upon which the cable franchisee had alleged a right of access as "recorded plats listing easements for telephone and electric utilities." *Admiral's Cove*, 835 F.2d at 1360. Contrary to the *McNeil III* panel's characterization, *Admiral's Cove* did not

---

banc *sua sponte* to announce that this policy would continue to apply in the Eleventh Circuit.

**21.** I reach this conclusion independent of the merits of the panel's result. For panels, what matters more is that "the applicable rule of law be settled[, rather] than it be settled right." *Burnet v. Corenado Oil & Gas Co.*, 285 U.S. 393,

405, 406, 52 S.Ct. 443, 446, 447, 76 L.Ed. 815 (1932) (Brandeis, J.).

**22.** The panel correctly concluded that if § 621(a)(2) reaches private easements in general, then the section also reaches private easements that extend into the interiors of dwellings.

describe publicly dedicated "general utility easements." Rather, *Admiral's Cove* described easements reserved for specific, not general, uses.

The *Admiral's Cove* court specifically rejected the developer's "determination that Congress authorized use of public easements but not easements dedicated for use by utilities [as] contrary to the legislative history of the Cable Act." *Admiral's Cove,* 835 F.2d at 1363. The court also rejected the developer's argument "that Congress only authorized cable franchises to place their cables in publicly owned easements." *Id.* at 1363. The *Admiral's Cove* court, therefore, held that the term "dedicated" did not limit section 621(a)(2)'s language to public easements. Yet, contrary to this precedent, the *McNeil III* panel held that the term "dedicated," as used in section 621(a)(2), "suggests the legal meaning of 'dedication.' In general, an easement is legally 'dedicated' only when the private property owner entirely relinquishes his rights of exclusion regarding the easement so that the general public may use the property." 953 F.2d at 606 (citing *Black's Law Dictionary* 412 (6th ed. 1990)). This statement implicitly rejects *Admiral's Cove*'s holdings.

*Thos. J. White* held that section 621(a)(2) grants cable franchises the right to traverse the developer's property to access easements contemplated by section 621(a)(2). We stated that the development's plats

> dedicated public utility easements to Florida Power and Light ("FP & L") and Southern Bell for the purposes of installing and maintaining their utilities. The plat also dedicated a "utility easement" to St. Lucie West Utilities, Inc. for the purpose of installing video communications. [The] plat provided that all roads

within [the development] would be private rights-of-way.... [The developer] permitted FP & L and Southern Bell to use the private road system [in the development] to gain access to their easements.

*Thos. J. White,* 902 F.2d at 907. In sharp contrast to the *McNeil III* panel's characterization of the easements at issue in *Thos. J. White* as just "private roads in the development," the quoted language identifies easements dedicated to specific utilities (Southern Bell, Florida Power and Light, and St. Lucie West Utilities, Inc.) for specific purposes (phone, electric, and cable operations). *Id.*[23]

The language of *Thos. J. White* and *Admiral's Cove* leaves no room for doubt that we previously addressed the Cable Act's operation on specific, not general, utility easements. Moreover, *Thos. J. White* addressed easements held by specific private entities. Faced with this unambiguous language in our prior decisions, the *McNeil III* panel's avoidance of these decisions' precedential force is, in my view, woefully inadequate.

### 2.

In addition to distinguishing the facts of *Thos. J. White* and *Admiral's Cove,* the panel asserted that the operation of Florida law required that the platted easements be publicly dedicated to general use, and thus provided a separate basis for distinguishing these precedents. Contrary to the panel's assertion, however, the Florida statutes cited by the panel indicate that a developer controls whether easements are dedicated, and whether this dedication is for specific or general use. The statutes specifically contemplate plats specifying private easements limited to specific uses. The statutes do not require the creation of public

---

**23.** The *McNeil III* panel seems to have confused two distinct categories of easements at issue in *Thos. J. White:* (1) the easements contemplated by § 621(a)(2), and (2) the right to traverse the developer's property to access easements contemplated by § 621(a)(2). The developer in *Thos. J. White* held interests in its development subject to the allegedly compatible utility easements. Just as in *McNeil III,* the developer claimed that it did not have to grant a cable franchisee access to the easements held by the utilities. Thus, the developer claimed that by requiring access over its private roads, § 621(a)(2) granted a cable franchisee an easement over its lands. In finding that the franchisee had a right to traverse the developer's property to access the relevant easements, the court necessarily determined that the easements the cable franchisee sought to reach were contemplated by § 621(a)(2).

easements; that decision is left to the developer. Consequently, resort to state law does not support the court's approach to distinguishing our precedent.

The panel relied on Florida Statutes sections 177.081 and 177.091(29). Section 177.-081 states that "all streets, alleys, easements, rights-of-way, and public areas shown on [plats of subdivisions], *unless otherwise stated [in the plat]*, shall be deemed to have been dedicated to the public *for the uses and purposes thereon stated.*" Fla.Stat. § 177.081(2) (emphasis added). This section creates the presumption that "streets, alleys, easements, rights-of-way and public areas" specified in a plat are "dedicated to the public" by the developer. The emphasized language, by limiting these servient estates to specific "uses and purposes," provides the developer with an express mechanism through which it can override the presumption. Thus, for example, if a plat mentions an electrical easement, section 177.081's presumption would operate to create a public electrical easement. The developer could opt, however, to restrict the easement to private use only (i.e., specify FP & L as the holder of an electrical easement as in *Thos. J. White*).

Section 177.091(29) confirms that private easements can survive the operation of section 177.081: "This section shall not apply to those *private easements* [which, although specified in the plat, are] granted to or obtained by a particular electric, telephone, gas, or other utility." Fla.Stat. § 177.091(29) (Supp.1990) (emphasis added).[24]

From sections 177.081 and 177.091(29), the panel inferred that both *Thos. J. White*

and *Admiral's Cove* only addressed public easements dedicated for general use. But as the foregoing analysis demonstrates, sections 177.081 and 177.091(29) permit developers to create private easements limited to specific uses specified in particular plats. These provisions, therefore, did not provide an adequate basis upon which to distinguish *Thos. J. White* and *Admiral's Cove.*

### C.

At the beginning of this part, I quoted *Bonner*'s admonition that the failure to follow precedent would "be inconsistent with the methodology of orderly administration of justice." I cannot overstate the importance of this warning. Yet, adherence to precedent is more than a measure to simplify administration of the law. We have recognized other factors underlying our decision to require our panel's to adhere to precedent.

> [Among these are] the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.

*Bonner*, 661 F.2d at 1209 (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970)). Most significantly, stare decisis provides the clear and stable body of law necessary to ensure "[t]he confidence of people in their ability to pre-

---

24. Section 177.091(29) modifies the operation of § 177.081 by authorizing cable systems to piggyback on platted utility easements, and provides that

> [a]ll platted utility easements shall provide that such easements shall also be easements for the construction, installation, maintenance, and operation of cable television services; provided, however, no such construction, installation, maintenance, and operation of cable television services shall interfere with the facilities and services of an electric, telephone, gas, or other public utility. In the

event a cable television company damages the facilities of a public utility, it shall be solely responsible for the damages. This section shall not apply to those private easements granted to or obtained by a particular electric, telephone, gas, or other public utility. Such construction, installation, maintenance, and operation shall comply with the National Electrical Safety Code as adopted by the Florida Power Service Commission.

*Id.; see generally Thos. J. White*, 902 F.2d at 910 (interpreting § 177.091(29)).

dict the legal consequences of their actions" and to "facilitate the planning of primary activity and to encourage the settlement of disputes without resort to the courts." *Moragne,* 398 U.S. at 403, 90 S.Ct. at 1789.

In *Admiral's Cove,* an Eleventh Circuit panel held that when an easement falls within the meaning of section 621(a)(2), the property owner cannot deny access to that easement. 835 F.2d at 1362. *Thos. J. White* reaffirmed this holding. 902 F.2d at 908–09. Since both holdings addressed private easements, the panel was bound to follow them. Because it did not, we now have two rules of law in this circuit concerning the proper construction of section 621(a)(2). To potential litigants (and to me) this circuit's interpretation of section 621(a)(2) is confused.

### IV.

As I have discussed, there were three reasons why the panel should not have applied the canon of statutory construction to avoid an unconstitutional construction of the Cable Act. First, the panel was bound by Supreme Court precedent that clearly establishes that statutes are not unconstitutional because they do not explicitly provide for just compensation; yet the panel, misunderstanding dictates of the Court's jurisprudence, sought to avoid an illusory unconstitutional construction. Second, the panel was bound by *Thos. J. White*'s and *Admiral's Cove*'s holdings; yet the panel failed to adhere to them. Third, to construe the Cable Act, the panel was not required to avoid its just compensation issue because that issue arose solely from the district court's fashioning of equitable relief; yet the panel found that the takings issue controlled its statutory interpretation. As I expressed in the opening paragraphs of this opinion, the first two reasons each warrant en banc review. The third reason demonstrates how the panel, contrary to the very rule of construction it sought to apply, took an unnecessary excursion into takings jurisprudence.

For these reasons, I respectfully dissent from the court's decision not to rehear this case en banc.

HATCHETT, Circuit Judge, dissenting:

I dissent from the decision to deny rehearing *en banc.*

ANDERSON, Circuit Judge with whom KRAVITCH, Circuit Judge, joins, dissenting:

Respectfully, I dissent from the decision not to rehear this case en banc.